AMANDA POPE, Respondent, v. W. F. FLOREA, Appellant.

**Kansas City Court of Appeals, November 25, 1912.**

1. **FRAUD AND DECEIT:** Exchange of Properties: Latent Defects. An action for damages for false representations in the sale of goods cannot be grounded on representations as to facts coming within the rule of *caveat emptor*, which requires a buyer to exercise reasonable care to discover defects, but latent defects, which are not discoverable by a reasonable examination, do not come within the rule, since the parties do not stand on equal ground as to such defects.

2. ————: Pleading. To state a cause of action for deceit, it is essential to aver that the representations made by defendants

were false and known by them to be false, and that they were made with the intention of deceiving plaintiff and that plaintiff was deceived thereby, and that relying upon them, he was induced to act to his injury.

3. ———: **Instructions: Measure of Damages.** If the plaintiff's instruction on the measure of damages is general and in no wise particularizes the elements of damages, it devolves upon the defendant to ask an instruction limiting what might possibly be its effect upon the jury.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Higbee & Mills* and *P. J. Reiger* for appellant.

*Campbell & Ellison* and *Chas. E. Murrell* for respondent.

BROADDUS, P. J.—This is a suit for damages for fraudulent representations. On the 14th day of February, 1910, the plaintiff was the owner of a ten acre tract of land, situate in Adair county, upon which there was a dwelling, and at which time defendant was the owner of two lots in the city of Kirksville, on which there was also a dwelling. On the day mentioned the parties exchanged properties. The plaintiff's property was encumbered by a mortgage for $800, upon which there was one year's interest due and unpaid.

The plaintiff in her petition alleges, that she was an old woman with impaired vision; that the defendant for the purpose of inducing said exchange of property "falsely and fraudulently stated and represented to the plaintiff that said dwelling house was new and that the same was new and of great value. That the said statements and representations were well known to the defendant to be false and untrue. That in fact said frame dwelling house was made and constructed from and of scraps of old and worthless lumber and

materials collected by defendant from various sources, and there were no sills in the same, and the same was cheaply and poorly put together, all of which was concealed from the plaintiff and unknown to her, and the said building was not new nor was it the same as new or of any great value. That said building was worth at least one thousand dollars less than it was represented to be by the defendant to plaintiff, and was worth at least one thousand dollars less than it would have been if it had been as represented by defendant to plaintiff. That plaintiff relied solely upon said false and fraudulent statements and representations made to her by the defendant and was deceived thereby and was thereby induced to part with her said ten acres in exchange for said lots and dwelling thereon,'' etc.

The answer of defendant admits the exchange of properties as alleged in the petition, and states that he assumed the payment of the mortgage on the property for $800 and interest. He denies the allegation of fraud, and alleges the fact to be that said exchange of properties was made at plaintiff's instance and request after she had made an examination of his property.

At the beginning of the introduction of testimony the defendant made the objection that the petition did not state a cause of action. The objection was overruled by the court.

It was shown that the dwelling house on the lots was erected some four or five years before the date of exchange, mostly of second-hand material, with the exception of the shingles on the roof, and the flooring. The frame of the building was oak, which was sound. The siding was white pine taken from another building. The window frames had also been taken from another building and were old fashioned. It was further shown that a close observer could examine the house and detect some of the second-hand lumber where it was exposed, but after it was ''painted it looked pretty good.''

A witness, who helped to construct the house, stated that the material put into it was ''scrap lumber of all lengths and dimensions;'' that the studding was pieced and that some of them did not quite reach to the plate and that connection was made by nailing a block onto the plate; that the flooring was also made of scrap lumber, which was covered by a carpet at the time of the exchange; that the sills were composed of a 2x8 or a 2x6 laid flat on which another was laid edgeways and nailed.

The plaintiff viewed the property in the company of a young girl, a granddaughter, and another person, who stated that he made no examination of the house whatever.

Mrs. Pope testified that she had expressed her willingness to a Mrs. Griffin that she wanted to sell or trade her property, and that the defendant came to see her and looked over her place and examined the house. He then said to plaintiff if she would come next day to his store, ''we would talk it over;'' that she went next day and defendant went with her to see his property; that it was painted and she could not see what it was made of; that she was ''not looking for old lumber;'' that she expected it to be a new house; that he told her it was a new house; that is the way he spoke at first, and then, finally, that it had been there about three years. She did not examine the floor nor the rafters, and she did not think of doing so. She testified that defendant represented to her that the house was worth $1200. She testified that after she had examined the house she was sick and wanted to go home, and told defendant that she would come back another day; that he said, ''No, get in the buggy and go with me now and we will fix it up today;'' that her eyesight was poor, and that she could hardly see at all without her glasses, and that she did not have them with her at the time.

One of the witnesses testified that the reasonable market value of the house was $250, and another that it would have been worth $675 if it had been built of new material, or material practically new. And there was other evidence to the effect that it would have been worth much more.

The defendant interposed a demurrer to plaintiff's case, which the court overruled. The plaintiff recovered a verdict for $275, from which defendant appealed.

It is contended, in the first place, that plaintiff's petition did not state a cause of action. The rule in such instances is stated as follows: "To state a cause of action for deceit, it is essential to aver that the representations made by defendants were false and known by them to be false, and that they were made with the intention of deceiving plaintiff, and that plaintiff was deceived thereby, and that relying upon them he was induced to act to his injury." [Remmers v. Remmers, 217 Mo. 541.] All these allegations are stated in the petition in somewhat different words, but substantially to the same effect.

The important question is whether the plaintiff has made out a case by her testimony. Mere expressions of opinion do not constitute fraud, but a false and fraudulent statement of a fact, the existence of which is concealed from the purchaser and which it is the duty of the seller, acting in good faith, to disclose, will constitute actionable fraud. "An action for damages from false representations in the sale of goods cannot be grounded on representations as to facts coming within the rule of *caveat emptor* which requires a buyer to exercise reasonable care to discover defects, but latent defects which are not discoverable by a reasonable examination do not come within the rule, since the parties do not stand on equal ground as to such defects." [Stratton v. Dudding, 147 S. W. 516, 164 Mo. App. 22.]

Applying the rule in such cases, the plaintiff made out a case for the jury. The evidence is most persuasive that defendant made fraudulent representations as to the character of the house, and that they were made for the purpose of deceiving plaintiff in that respect. It is not denied that the house was practically built of old materials, and, of course, defendant had knowledge of the fact, as he erected it himself. While a careful inspection would have disclosed that it was in part composed of old material, yet in many other and important parts it consisted of old material that was hidden and would not be perceived by ordinary scrutiny, and especially, by an old and feeble woman with defective eyesight. The amount of old material used, in fact, was only made manifest by the evidence of a carpenter who assisted in the construction. The fact that defendant wanted to close the transaction at once is, of itself, a very suspicious circumstance indicating that he was apprehensive that plaintiff might soon learn the facts about the house, and that the least delay would prevent a consummation of the exchange. Under the circumstances, knowing that plaintiff was an old and feeble woman with defective eyesight, and knowing that she was relying on the truth of his representations, he was in duty bound to divulge the truth as to the construction of the house, as that was a matter of much consequence. That plaintiff relied upon defendant's said representations there can be no doubt, and that defendant intended to deceive her is a reasonable inference to be drawn from all the facts and circumstances surrounding the transaction. [Smith v. Jefferson Bank, 120 Mo. App. 527; Meier v. Butcher, 197 Mo. 62.]

In plaintiff's instruction No. 1 the court failed to state the elements of damages the jury should consider in making their verdict. If their verdict should be for plaintiff the jury were told that, "then your verdict

should be for plaintiff in such sum as will reasonably compensate her for any damages that she may have sustained because of such exchange of properties, not to exceed the amount of $1,000.'' This is a mere non-direction and no ground for error in the appellate court. [Wheeler v. Bowles, 163 Mo. l. c. 409.] The rule is that: ''If the plaintiff's instruction on the measure of damages is general and in no wise particularizes the elements of damages, it devolves upon the defendant to ask an instruction limiting what might possibly be its effect upon the jury.'' [Haymaker & Crookshanks v. Adams & Son, 61 Mo. App. 581.] There are many later cases to the same effect. One or more cases of the kind may be found in most every volume of the Appellate Reports for the last seven or eight years    .

The action of the court in interlining certain of defendant's instructions, we think, was proper. Finding no error in the record, the cause is affirmed. All concur.