THIRD NATIONAL BANK, a Corporation, and CHARLES L. McANINCH, Respondents, v. YORK-SHIRE INSURANCE COMPANY, a Corporation, Appellant.*

*Kansas City Court of Appeals. December 29, 1924.*

1. **CHATTEL MORTGAGES: Liens: When a Note Secured by Chattel Mortgage is Discharged, the Lien of the Mortgage is Also Discharged Without Cancellation or Release of Mortgage.** Where owner of automobile before insuring it, indorsed without recourse a note, secured by chattel mortgage upon the same and which note was turned over to him as his note without release of mortgage, no mortgage thereafter existed as note secured thereby having been discharged the lien of the mortgage was also discharged and the title to the mortgaged property was immediately reinvested in the mortgagor without a cancellation or release of the mortgage.

2. **INSURANCE: Waiver: Where Agent of Insurer Knew When Policy Was Issued That There Was a Chattel Mortgage upon Property Insured, the Insurer Waived the Matter of Its Existence.** Where agent of insurer was informed by insured that chattel mortgage on automobile had been discharged but not released of record, it was immaterial whether mortgage was valid because supported by a sufficient consideration or because insured was estopped from denying sufficiency thereof, since if there was in fact a mortgage existing at time policy was issued, insurer waived the matter of its existence.

3. ————: **Misrepresentations: Misrepresentation of Insured as to Consideration for Mortgage upon Automobile Held Not Material to the Risk.** Although the existence of a mortgage is material to the risk, misrepresentation made by insured to agent of insurer that mortgage was given for sufficient consideration and had been discharged but not released of record, when same had been given to defeat his creditors and without consideration is a collateral matter and cannot be taken advantage of by insurer as material to the risk.

4. ————: ————: **Misrepresentations of Insured as to Mortgage on Automobile Held Not Made With Intent to Deceive and Defraud Insurer.** Provision in policy on automobile that it should be void if assured misrepresented circumstances concerning insurance or

Third Nat. Bank v. Yorkshire Ins. Co.

subject thereof, refers to misrepresentations made with the intent and purpose of deceiving and defrauding insurance company, and where insured after giving mortgage on automobile without consideration so as to defeat creditors told mortgagee to tell anyone seeking information that mortgage was bona fide, provision *held* inapplicable, particularly where misrepresentations were not pleaded.

5. ———: ———: **False Swearing of Insured in Deposition Held Not Made With Intent to Induce Insurer to Pay Loss.** Provision in policy that it should be void if insured by false swearing made any false statements touching any matter relating to insurance or subject thereof before or after the loss, in so far as it has reference to matters occurring after the loss, refers to false swearing made by insured to induce insurer to pay the loss and has no reference to alleged false swearing by insured in depositions arising after insurer's refusal to pay loss and filing of suit.

6. **INSTRUCTION: Damages: A General Instruction upon Elements of Damages if Proper as Far as it Goes is Not Erroneous.** Where an instruction is general, does not particularize as to the elements of damage to be considered and is proper as far as it goes, is not erroneous, and it is duty of party objecting to offer an instruction confining the damages to those properly allowable.

7. **EVIDENCE: Where Portion of Testimony Was Admissible, Objection to Entire Testimony Was Properly Overruled.** Where certain testimony of attorney for insured as to conversation with insurer's attorney was not admissible for purpose of showing delay or vexatious conduct on part of insurer after suit was brought, but other testimony given by him was competent to show that insurer's reasons for refusal to pay were without merit, objection and motion to strike out aimed at entire testimony *held* properly overruled.

8. **INSURANCE: Damages: Evidence Held Sufficient to Show That Refusal to Pay Loss Was Vexatious.** Where insurer refused to pay loss for certain assigned reasons which it abandoned before suit was filed and defended upon a different ground and lost, evidence *held* sufficient to show that refusal to pay was vexatious.

---

*Corpus Juris-Cyc. References; Appeal and Error, 3CJ, p. 818, n. 23. Chattel Mortgages, 11CJ, p. 674, n. 26, 28. Motor Vehicles, 28 Cyc., p. 50, n. 59, New. Trial, 38 Cyc., p. 1376, n. 99; p. 1694, n. 58.

Appeal from the Circuit Court of Pettis County.—*Hon. Dimmitt Hoffman,* Judge.

AFFIRMED (*conditionally*).

· *H. B. Shain* and *W. D. O'Bannon* for respondent.

*Lamm & Lamm* and *Crow & Newman* for appellant.

BLAND, J.—This is an action on a fire and theft insurance policy issued upon an automobile belonging to plaintiff, McAninch. There was a verdict and judgment in favor of plaintiffs in the sum of $1295, and defendant has appealed. On the 10th day of May, 1923, while the policy was in force the automobile was stolen and afterwards burned. The policy is in the sum of , $1000 and insured the automobile for one year beginning April 23, 1923. A short time after the fire McAninch borrowed the sum of $750 from plaintiff bank and assigned to the bank an interest to that extent in the insurance policy and claim against defendant.

Defendant's amended answer alleges, among other things, that the policy provided that if the automobile was encumbered by a mortgage the policy should be void and pleads that the policy was void for the reason that at the time of the issuance of the policy and at the time of the alleged loss the car was encumbered by a chattel mortgage.

Defendant insists that its demurrer to the evidence should have been sustained for the reason that on account of perjury and false statements of McAninch he is unworthy of belief. There have been two suits on this policy. In the first suit McAninch alone was plaintiff and his attorneys having discovered that he had assigned an interest in the policy and claim to the bank, dismissed that suit and brought the present one in the name of the two plaintiffs. McAninch's deposition was taken in the former suit. He testified in that deposition that when he purchased the car he gave a chattel mortgage thereon for a part of the purchase price; that at the time the policy was solicited by defendant's agent

this mortgage had been paid off; that this mortgage was released after the fire and was turned over to the de fendant; that prior to the time that the insurance was taken out there was a second mortgage upon the car made to one Shepherd which plaintiff, McAninch, had paid off in cash before the policy was written but which had not then been released; that afterwards this mortgage was likewise released and sent to the defendant. He testified that he told Dow, the insurance agent who solicited the policy, that the second mortgage had been paid off but not released and Dow said, "Well, we'll write it that way." Defendant now insists that McAninch did not tell Dow of the Shepherd mortgage and this contention is based on what appears in the deposition following the testimony we have related. Defendant's contention rests upon the following testimony of McAninch:

"Q. What did you tell him (the agent) when you went to take out the insurance? A. Told him I wanted insurance to insure the car against fire and theft.

"Q. What else did you tell him if anything? A. Nothing."

After testifying as just quoted McAninch again explained that he told the agent that there was a mortgage upon the car that had been paid off but had not been released.

It is not apparent what the witness meant when he said that he told the agent nothing except that he wanted to insure the car against fire and theft, but after giving this testimony he further testified that he told the agent about the mortgage. Whether he did not understand the question at the time he testified that he told the agent nothing else or whether he had reference to the matter of the description of the car, it not plain. Of course, he must have said something else to the agent for the reason that the agent would not have known the amount of insurance to be written if McAninch had not

told him. The deposition fairly construed shows that McAninch told the agent about the Shepherd mortgage.

However, McAninch's testimony at the trial was different from that given in his deposition. At the trial he testified that he told the agent that the Shepherd mortgage had been executed by him to secure the payment of $600 but that as a matter of fact no valid note and mortgage ever existed because the note and mortgage were executed without any consideration therefor; that the mortgage was placed upon the automobile because he was threatened with a suit upon a forged or fraudulent note, and it was executed for the purpose of preventing the holder of the note from levying upon the automobile in case he obtained judgment; that within a short time after the execution of the note and mortgage Shepherd delivered the note to McAninch. McAninch further testified that the mortgage was not released until after the loss, that the placing of the Shepherd mortgage upon the car was McAninch's own idea; that he did so without consulting his attorney but that when the latter found out what he had done, he told him that such a step was useless and he, McAninch, thereupon obtained the note from Shepherd. He testified that when his deposition was taken he had never been a witness before and was somewhat confused and had testified to facts concerning the second mortgage when he had the first in mind; that he stated to the agent all the facts in connection with the execution of the mortgage prior to and at the time of the issuance of the policy. Dow testifying for defendant stated that he did not at any time have any information or knowledge of the existence of the Shepherd mortgage.

Shepherd, a witness for plaintiffs, testified concerning the giving of the second mortgage substantially as McAninch testified at the trial. He stated, however, that McAninch told him in the fall of 1923 before the first suit was filed that if any one asked him anything about the mortgage "to tell them that he (McAninch)

paid me in cash'' the sum of $600. He did not instruct Shepherd to tell this to the attorney for the insurance company but to tell any one who came to see him about it. He also testified that plaintiffs' attorney, O'Bannon, told him, between March 26th and 29th, 1924, that he should not tell anybody the real facts in the matter until he went on the witness stand and not to tell the attorneys for the insurance company the real facts and truth of the matter until that time. Upon being recalled he testified that O'Bannon told him to "just let this go as it is until you come on the witness stand;" that he should relate the matter just as it occurred when he got on the witness stand. O'Bannon testified that what he told Shepherd was not to talk to the attorneys of the insurance company. Shepherd further testified that a few days prior to March 29, 1924, before the present suit was first set for trial, the attorneys for defendant came to see him and that he told them that McAninch had paid him $600 in cash approximately two months after the destruction of the automobile and that the $600 in question was a loan made by the witness to McAninch. Shepherd admitted that what he told the attorneys was not true but that he told them this because directed to do so by McAninch.

Plaintiffs' attorney, O'Bannon, testified that the case was set for trial on the 29th day of March; that a week prior thereto local counsel for defendant called him over the phone and asked him if he would waive the penalties and attorney's fees for vexatious delay if the company would accept the face of the policy; that he got in touch with his clients and they agreed to the proposition and it was accepted; that he came to the court house on the 29th expecting defendant to live up to the agreement he had made with its local counsel; that while waiting the call of the case defendant's out-of-town counsel, Newman, appeared for the first time and called O'Bannon's attention to the Shepherd mortgage; that up to that time defendant had never based any defense

on the Shepherd mortgage incident but had merely filed a general denial; that Newman showed him an amended answer based upon the mortgage incident; that thereupon O'Bannon told Newman "all that occurred" and related to him that while the witness was out of town McAninch gave Shepherd the mortgage in question to discourage a levy on his automobile; that when the witness learned of this he told McAninch that he had done wrong and that it would not be effective for the purpose intended, that he should get back the note; that at that time Shepherd had held the note not to exceed three or four days; that Newman replied that he would investigate the matter and would keep the contract made by the local attorney and pay the face of the policy if he found the facts as stated by O'Bannon to be true; that thereupon O'Bannon stated, "Shepherd is here and while I told him not to talk to you, you can talk to him—if he verifies what I say, I am going to depend upon you to do what you say." Newman talked to Shepherd and obtained an affidavit from him on that day. O'Bannon further testified that about an hour after this conversation between Newman and himself the former called the latter over the phone and told him, "Mr. Shepherd—he has verified it. We are going to pay your policy;" that he, O'Bannon, did not know that defendant would not pay the policy until the case was called for trial, which was on May 21, 1924.

Shepherd in his affidavit that he gave to Newman and which was introduced in evidence by defendant, stated what actually occurred in reference to the giving of the chattel mortgage and this was substantially as he testified to at the trial. He stated in the affidavit that there was no consideration for the note and mortgage but that the note was endorsed without recourse and immediately returned. Shepherd testified at the trial that a day or two after it was executed he gave the note back to McAninch. The note and mortgage were executed on January 24, 1923. The mortgage was filed on

January 25, 1923, and released on August 14, 1923. The record of the Recorder shows that when the mortgage was released the note was "produced, signed and cancelled."

On the point made by defendant that McAninch was guilty of perjury, we think that if it were not for Shepherd's testimony the difference between the testimony of McAninch given when his desposition was taken and that given at the trial would undoubtedly be a matter for the jury. The deposition was given on November 5, 1923. Sometime prior to this McAninch told Shepherd to say to any inquirer that the Shepherd mortgage represented an actual loan of $600. McAninch does not dispute this testimony of Shepherd. What McAninch told Shepherd to say is entirely in harmony with what McAninch testified to in his deposition and which the latter now says was a mistake. It certainly is questionable whether we should be asked to believe McAninch when he says that he made a mistake in his deposition. However, should we entirely ignore McAninch's testimony on this point, we still have Shepherd's testimony, corroborated by O'Bannon, that the Shepherd mortgage was without consideration and was to defeat a possible creditor of McAninch. Defendant insists that McAninch is estopped from denying that the mortgage is a valid one, but assuming this contention to be correct, what does it avail defendant? It is apparent that there was no mortgage in existence when the policy was written. The endorsing of the note without recourse and the turning of it over to McAninch as his note, destroyed the lien of the mortgage. It is well settled that when a note secured by a chattel mortgage is discharged, the lien of the mortgage is also discharged and the title to the mortgaged property is immediately re-invested in the mortgagor without a cancellation or release of the mortgage. [2 Cooley's Briefs on Insurance, pp. 1420, 1421; 11 C. J., pp. 674, 675.]

Aside from this, the agent knew when the policy was issued that there had been a chattel mortgage on the property in favor of Shepherd that had been discharged but not released of record. It is true that he was told that it represented an actual loan of money while the facts are that it was such a transaction that McAninch cannot say it was not for a sufficient consideration. This is the difference, so far as defendant is concerned, between tweedle-dum and tweedle-dee. What defendant provided against in its policy was the existence of a valid mortgage and if there was any mortgage in existence at the time the policy was issued, it was valid mortgage supported by a sufficient consideration, whether it was given under the circumstances related by McAninch in his deposition or as shown at the trial. If as shown at the trial, it was given upon a sufficient consideration because McAninch is estopped to say otherwise. Under such circumstances if there was in fact a mortgage existing at the time the policy was issued, the company waived the matter of its existence. [3 Cooley's Briefs on Insurance, p. 2463.]

The lack of good faith in this transaction is not entirely on the part of McAninch. The testimony shows that the only reason given by defendant's adjuster before the first suit was brought for not paying the loss was that the automobile was a model of 1920 instead of 1921. This defense was not made at the trial but defendant filed a general denial which stood as defendant's answer when the case was first set for trial. The inference is irresistible that after the general denial was filed defendant got wind of the Shepherd mortgage on record and then filed its present answer setting up the mortgage as a defense and attempted at the trial to take advantage for itself of McAninch's misconduct in attempting to defeat his creditor by conveying the automobile without consideration to Shepherd. Defendant, of course cannot take advantage of McAninch's misconduct in attempting to defeat his creditor, however rep-

rehensible that may be, and from what we will hereafter say it cannot take advantage of the misrepresentations of Shepherd made to defendant's attorneys. The truth of the matter is that the record shows that defendant had no defense or rather knew of no defense when it refused to pay the loss but after suit was brought attempted to seize upon McAninch's misconduct in a collateral matter to defeat the case. Although the existence of a mortgage is material to the risk (Stoddart v. Ins. Co., 251 S. W. 398), the misrepresentation made by McAninch to Dow in reference to the consideration in connection with the Shepherd mortgage, from what we have said, was not a material one and therefore no defense. [Eddy v. Ins. Co., 70 Iowa, 472.]

The fact that McAninch told Shepherd not to tell anyone seeking information concerning the matter that the mortgage was a bona-fide one and that McAninch had paid him the sum of $600 in cash to discharge the mortgage, tends to show that McAninch was attempting to conceal a circumstance concerning the insurane. The policy provided—?

"This entire policy shall be void if the assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud, or false swearing by the assured touching any matter relating to this insurance of the subject thereof, whether before or after a loss."

Under this provision of the policy the misrepresentations, or false swearing, must be made for the intent and purpose of deceiving and defrauding the insurance company (Hall v. Underwriters' Association, 106 Mo. App. 476, 478, 479), and from what we have said there was no fraud (for fraud means injurious deception) in the misrepresentations of Shepherd. Aside from this, the misrepresentations of McAninch made through Shepherd were not pleaded. [2 Cooley's Briefs on Insurance, pp. 1176, 1177, 1385.]

We think the provision of the policy last quoted, so far as it has reference to matters occurring after the loss, refers to misrepresentation, fraud and false swearing made by the insured to induce the company to pay the loss, that is, fraud committed while the loss was being investigated by the company to determine whether or not to pay the loss, and has no reference to matters arising after the company's refusal to pay the loss and suit has been filed. The false swearing of McAninch in his deposition was after suit was filed and at that time the parties were dealing with each other at arm's length and there was no legal duty upon McAninch to relate the true circumstance surrounding the giving of this mortgage. He had a perfect right to treat the matter in any way he desired after defendant refused payment and suit was brought and until he was placed under oath on the witness stand. Then if he committed perjury, the policy did not cover that. There is no merit in defendant's claim that there was a false or fraudulent representation made by McAninch by reason of the assignment of a part of the policy and claim against the defendant.

Complaint is made of plaintiffs' instruction No. 1. This instruction purports to cover the entire case and direct a verdict. After relating the circumstance under which plaintiffs would be entitled to recover, the instruction reads—

". . . then your verdict will be for the plaintiffs for whatever sum, if any, you may find from the evidence that plaintiff was damaged, if any, by the loss of said automobile by fire or theft, or either, if you further find that said automobile was lost by either fire, theft or both."

It is insisted that there is a different measure of damages in reference to a loss by theft and from a loss by fire and that the instruction gives the jury a roving commission to find any damages they might think proper. The instruction is not upon the question of the measure of damages and it has long been held, al-

. though formerly to the contrary, that where the instruction is general upon the subject and in no wise particularizes as to the element of damage to be considered and is proper as far as it goes, it is not erroneous, and that it is the duty of the defendant to offer an instruction confining the damages to those properly allowable if it sees fit. [Haymaker & Crookshanks v. Adams & Son, 61 Mo. App. 581; Smith v. Mederacke, 259 S. W. 83, 88; Baldwin v. Harvey, 177 S. W. 1087; Waite v. Railroad, 168 Mo. App. 160, 167; Pope v. Florea, 167 Mo. App. 595, 601.]

It is insisted that the court erred in permitting witness O'Bannon to testify as we have related his testimony. The witness was first asked whether he had had any conversation concerning the liability of defendant growing out of the loss with a representative of the insurance company. This was objected to for the reason that if there was such a conversation it was in regard to a settlement or compromise and therefore inadmissible. The court sustained the objection but upon plaintiffs' making a detailed offer of proof the court ruled that the conversation was not in reference to a settlement and compromise and that he would admit the testimony on the question of vexatious refusal to pay. The objection to the testimony before it was introduced was that it was in regard to a settlement or compromise and that it had no bearing upon the issues. After it was admitted, defendant moved to strike it out for the same reasons, and for the additional reason that it did not tend to show any actual settlement or authority of attorneys to make it, and that the policy was void in the beginning and it could not be given life by the matters testified to by the witness.

There seems to be no dispute as to the rule in reference to what facts are admissible on the question of vexatious refusal to pay. The company's conduct cannot be determined by the facts as found by the jury but those as they reasonably appear to be to the insurance

company before trial. Of course, the evidence was not admissible for the purpose of showing any delay or vexatious conduct on the part of the defendant after suit was brought. [State ex rel. v. Allen, 262 S. W. 43; Weston v. Ins. Co., 191 Mo. App. 282; Waddle v. Ins. Co., 184 Mo. App. 581; Todd v. Ins. Co. of New Haven, 203 Mo. App. 474.]

However, there was much in the testimony bearing upon issues raised by defendant other than the conduct of the defendant after the suit was brought and the objection and the motion to strike out were aimed at the entire testimony. The court was not required to separate the wheat from the chaff. If any of it was competent, the objection was properly overruled. In the first place defendant had sought to get before the jury that McAninch and O'Bannon had attempted to suppress the real facts concerning the execution of the Shepherd mortgage. The testimony was competent, at least as related to O'Bannon, to show that defendant's contention was without merit. It is shown that while O'Bannon had told Shepherd not to talk about the matter to anyone, that before trial O'Bannon arranged a meeting between Shepherd and defendant's attorney and that during the interview that ensued Shepherd disclosed all the facts and circumstances concerning the giving of the mortgage, and that the meeting resulted in defendant's taking an affidavit from Shepherd upon the subject.

When the suit was brought defendant filed an answer which was merely a general denial and did not set up the defense concerning the Shepherd mortgage. The only reason defendant gave for refusing to pay the loss was that the car was a 1920 instead of a 1921 model as represented by McAninch at the time the policy was taken out. There was no defense made in reference to this matter at the trial. While defendant after suit was attempting to defend upon the ground that there was a mortgage executed in favor of Shepherd upon the car contrary to the provisions of the policy, and this was

the sole defense, O'Bannon's testimony tended to show that nothing but a general denial had been filed when the case was first brought, and that the matter of the Shepherd mortgage had not been advanced by the defendant as a reason for refusal to pay the loss until the 29th day of March, 1924. While his testimony was not competent to show any vexatious conduct on the part of the defendant after the filing of the suit, it did have a bearing upon defendant's conduct before the suit was brought, for the reason that if defendant abandoned its ground for refusal to pay before suit and defended upon a different ground and lost, there is no question but that the refusal to pay was vexatious. [Groves v. Great Eastern Casualty Co., 212 Mo. App. 316, 324, and cases cited.]

Defendant claims that there is no evidence of vexatious refusal to pay but from what we have said there is no merit in the contention. We think, however, that the verdict is excessive. The jury allowed the sum of $1145 upon the policy and $150 attorney's fee. The policy was in the amount of $1000 but the interest amounts to only $50.83-1/3, therefore the verdict is excessive to the amount of the difference between $145 and $50.83-1/3, which is $94.16-2/3. If plaintiffs will within ten days remit the sum of $94.17 from the face of the judgment, the judgment will be affirmed, otherwise it will be reversed and the cause remanded.

All concur.