BOWES, Judge.
Defendant, Certain Underwriters At Lloyd’s of London, appeals a judgment of the trial court finding that coverage existed under an insurance policy issued by Lloyd’s to LMS and granting a motion for summary judgment in favor of plaintiff, Louisiana Maintenance Service (“LMS”) to this effect. LMS also appeals alleging that the trial court erred in denying to it statutory penalties and attorney’s fees with the motion for judgment. We affirm in part, annuli and set aside in part and remand.
FACTS AND PROCEDURAL HISTORY
In her reasons for judgment, the trial judge gave a comprehensive narration of the relevant facts leading up to this litigation, which we adopt, in part, as our own for the purposes of this appeal as follows:
By contract dated April 30, 1981, Louisiana Maintenance Services, Inc. (“LMS”) *1336 agreed to provide skilled construction and maintenance labor to Occidental Chemical Corporation (“Oxychem”) at Oxychem’s chemical manufacturing plant. The contract contained an indemnity provision and required LMS to procure . specified insurance.[1]
In 1985, LMS contacted Richard Ba-glow of North Star Agency in order to transfer their insurance coverage. A copy of the contract between LMS and Occidental was furnished to Baglow. North Star obtained a liability policy from Lloyd’s, effective June 1, 1986 to June 1, 1987, and renewed the policy through North Star for the period June 1, 1987 to June 1, 1988.
On October 2, 1987, a thirty ton Grove hydraulic crane (cherry picker) was damaged while being negligently operated by an LMS employee at the Oxychem plant.[2] The crane had been loaned to LMS by Oxychem, who had leased it from Nic-holls Construction Company. LMS immediately notified its agent, Richard Ba-glow, of its claim. Lloyd’s denied the claim, asserting it was not covered under the Lloyd’s policy because it involved equipment in the care, custody and control of the insured, a clearly stated exclusion in the policy.
Pursuant to their indemnification obligation under their contract with Oxy-chem, LMS executed a settlement and release agreement [with Oxychem] and the owner of the crane, whereby LMS agreed to pay $98,115.94 for the damage, and pursued its claim against Lloyd’s.
LMS filed suit against Lloyd’s, seeking recovery of the amount it had paid Oxy-chem, alleging coverage under the policy issued by Lloyd’s. LMS also named as defendants North Star and Richard Baglow alleging that, should the court find that Lloyd’s policy did not provide insurance coverage, then North Star was liable to LMS for failing to procure appropriate coverage.
Lloyd’s filed a motion for summary judgment, alleging that its contract with LMS specifically excluded coverage and, therefore, it was entitled to judgment as a matter of law. LMS filed a cross-motion for summary judgment alleging that coverage did exist and that they were entitled to statutory penalties and attorney’s fees for Lloyd’s arbitrary and capricious failure to pay their claim.
Following a combined trial of both motions, the trial court rendered judgment in favor of LMS and against Lloyd’s finding Lloyd’s policy did provide coverage. The trial court also found that there was no showing that Lloyd’s was arbitrary and capricious in its failure to pay LMS’s claim and, therefore, it denied LMS’s claim for penalties and attorney’s fees. LMS’s claims against North Star and Richard Ba-glow were not considered. This appeal followed.
ANALYSIS
On appeal, Lloyd’s argues that the trial court erred in failing to construe the *1337 policy as a whole, which would require a finding that liability for damages was ex-eluded in this case.
LMS argues that the policy does provide coverage for the claim in question, or alternatively, that the policy is ambiguous and should be construed to provide coverage.
The pertinent part of the CGL policy form provided in pertinent part:
I. COVERAGE A — BODILY INJURY LIABILITY
COVERAGE B — PROPERTY DAMAGE LIABILITY
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgement or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment of judgements or settlements. Exclusions:
This insurance does not apply:
a) to liability assumed by the Insured under any contract or agreement except an incidental contract but this exclusion does not apply to a warranty of fitness or quality of the named insured’s products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;
* * * * * *
k) to property damage to
(1) property owned or occupied by or rented to the insured,
(2) property used by the insured, or
(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;
* * * * * *
o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
[Emphasis added].
As can be seen above, by the terms of this policy, coverage for liability for damages to property in the control of LMS and property damage to equipment furnished to LMS, such as the cherry picker owned by Oxychem, is excluded.
The CGL policy was amended by the Endorsement as follows:
I. CONTRACTUAL LIABILITY COVERAGE
(A) The definition of incidental contract is extended to include any oral or written contract or agreement relating to the conduct of the named insured’s business.
* * * * * *
(C) The following exclusions applicable to Coverages A (Bodily Injury) and B (Property Damage) do not apply to this Contractual Liability Coverage: (b), (c)(2), (d) and (e).
******
VI. BROAD FORM PROPERTY DAMAGE LIABILITY COVERAGE (Including Completed Operations)
The insurance for property damage liability applies, subject to the following additional provisions:
(A.) Exclusions (k) and (o) are replaced by the following:
******
*1338 (2) except with respect to liability under a written sidetrack agreement or the use of elevators
(a) to property while on premises owned by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured.
(b) to tools or equipment while being used by the insured in performing his operations.
(c) to property in the custody of the insured which is to be installed, erected or used in construction by the insured.
(d) to that particular part of any property, not on premises owned by or rented to the insured,
(i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or
(ii) out of which any property damage arises, or
(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured;
(3) with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company’s manual as ‘including completed operations’, to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.
In analyzing the provisions of the insurance agreement, we are bound by our decision (coincidentally by this identical panel) in Oliver & Wool Const. v. Metro. Erection, 524 So.2d 911 (La.App. 5 Cir.1988). In that case, Oliver & Wool, the general contractor, and its insurer sought indemnification from Metropolitan Erection Co. (“Metropolitan”) after it paid workers compensation benefits to an employer, Metropolitan. Metropolitan was insured by a comprehensive general liability policy issued by USF & G. The policy language was identical to that at issue in this case. This Court found that the basic policy excluded liability for worker’s compensation benefits and that, the broadening of the definition of “incidental contracts” in the endorsement did not serve to provide coverage where none had previously existed. There we said:
We find no merit in appellants' argument that the policy provides coverage for the claim in question, or alternatively, that the policy terms are ambiguous and should therefore be construed to provide coverage. The basic coverage provision excludes any liability for claims for worker’s compensation benefits or for bodily injury to the insured’s employee arising out of his employment, except as the insured assumes under an incidental contract. Incidental contact is narrowly defined in the basic policy and includes only written agreements of lease, easement, indemnification of municipalities, sidetrack and elevator maintenance. The policy endorsement for contractual liability coverage states that it ‘forms a part of the policy to which attached’ and ‘modifies such insurance.’ Although this endorsement extends the definition of an incidental contract to include any agreement relating to the conduct of the insured’s business, the same exclusions in the basic policy are applicable except those specifically made inapplicable [by the endorsement]. The exclusions from liability for worker’s compensation and bodily injury to the insured’s employee arising from his employment are not stated to be inapplicable; accordingly, they are applied to limit the coverage provided by the endorsement.
We are in complete agreement with appellant’s argument that in a suit to recover benefits under a policy, the insurer has the burden of proving facts which limit its liability; and also that any ambiguity in an insurance contract or policy must be construed in favor of the insured or the person claiming coverage *1339 and against the insurer. Our law is well settled to that effect. Paret v. Louisiana Health Serv. Indem., [366 So.2d 634 (La.App. 3 Cir.1977)]. Because of this, summary judgment may not be rendered declaring lack of coverage unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. LSA-C.C.P. art. 966; Westerfield v. LaFleur, [493 So.2d 600 (La.1986)]. However, we have applied this standard, and we find no ambiguity, vagueness or inconsistency in the policy before us.
Our careful consideration of the terms of the USF & G policy convinces us beyond doubt that it excludes worker’s compensation payments.
At p. 914.
In our opinion, a similar situation exists in this case. It is readily apparent that the GCL policy specifically excluded coverage for liability for damage defined by Section (k), “property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control,” and also by Section (o), “property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.”
The endorsement in Section 1(c) specifically provides that coverage is not excluded for sections (b), (c)(2), (d) and (e) of the primary GCL policy thereby adding coverage for those sections. The endorsement also replaces the exclusions of sections (k) and (o) with the exclusion from liability for damage (2)(b) “to toolá or equipment while being used by the insured in performing his operations.” However, the endorsement does not eliminate liability for property damage to equipment from the exclusions set forth in the basic policy.
In Oliver & Wool, supra, we found that the exclusions of the basic GCL policy remained in effect unless they were specifically deleted by the endorsement, Section 1(c), which is present in both policies. Applying the same standard here, we see no reason to reach a different result in this case. Therefore, we find that the basic coverage provision of the GCL policy issued by Lloyd’s excluded liability for damage to the cherry picker which was leased by Oxychem and used by LMS. This exclusion in the basic policy is not affected by the endorsement because the endorsement did not state otherwise and, therefore, this exclusion in the basic policy must be applied to the facts of this case.
LMS also appealed, arguing that the trial court erred in failing to find that Lloyd’s was arbitrary and capricious in its failure to pay LMS. Because we find that no coverage was afforded under the terms of the policy, we also find that Lloyd’s did not act arbitrarily and capriciously in failing to pay the claim made under the contract.
Accordingly, we hold that the trial court erred in finding that, as a matter of law, coverage under Lloyd’s policy existed in this case. The judgment of the trial court granting summary judgment in favor of LMS is annulled and set aside. The trial court’s judgment denying LMS statutory penalties and attorney’s fees is affirmed. The case is remanded for further proceedings not inconsistent with these proceedings.
AFFIRMED IN PART; ANNULLED AND SET ASIDE IN PART; AND REMANDED.
WICKER, J., concurs in the decree.

. Article V of the Oxychem contract (“Identification”) required LMS to indemnify Oxychem and hold Oxychem harmless against liability ‘by reason of personal injury, wrongful death or property damage to any person or property arising out of or as a result of or in connection with work to be performed by contract from any cause excepting the sole negligence of Company, its employees or agents.”
Article XIII (Contractor's Responsibilities) subsection (9), required LMS "to return to Owner on demand, any tools or equipment loaned to him by Owner in the same condition as when received, normal wear and tear excepted.”
Article VIII (“Insurance”) required the following:
1. Workers’ Compensation
2. Comprehensive General Liability, providing:
a. Personal injury liability.
b. Broad form property damage liability endorsement.
c. Owners and contractors protective liability.
d. Blanket contractual liability insurance sufficiently broad to include those sections of the Agreement relating to Contractor's liability and indemnity to Owner.

. Terry Champagne, the LMS employee operating the crane stated that he picked up scrap metal with the cherry picker and swung the load to another location without setting out the outriggers which provided balance, causing the crane to overturn.