616 So.2d 1250 (1993)
LOUISIANA MAINTENANCE SERVICES, INC.
v.
CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, et al.
No. 92-C-2382.
Supreme Court of Louisiana.
April 12, 1993.
Rehearing Denied May 13, 1993.
*1251 Daniel Lund, Montgomery, Barnett, Brown, Read, Hammond & Mintz, Robert E. Durgin, for applicant.
Alan R. Sacks, Sacks & Eason, Alan D. Ezkovich, Sessions & Fishman, for respondent.
WATSON, Justice.[*]
The defendant insurer refused to pay the plaintiff contractor's claim for damage to a cherry picker under an undelivered comprehensive general liability policy. The insurer relied first on an exclusion for property in the care, custody and control of the insured and then, long after suit was filed, relied on an exclusion for tools and equipment used by the insured. The issues are: (1) coverage under the policy; and (2) the insurer's good faith.

FACTS
Plaintiff, Louisiana Maintenance Services, Inc. (LMS), is an independent contractor in the business of furnishing labor. LMS entered into a contract with Occidental Chemical Corporation (Occidental). LMS agreed to indemnify Occidental for all damage claims connected with performance of the work, except those resulting solely from Occidental's negligence. As a condition of the contract, LMS bought a comprehensive general liability insurance policy with Certain Underwriters at Lloyd's of London through North Star Agency, Inc. North Star's agent, Richard Baglow, placed the insurance after receiving a copy of the LMS/Occidental contract. Baglow advised LMS that it had comprehensive insurance with one million dollar property damage liability limits (Exhibit 34). LMS paid a premium of $79,012.50. On June 4, 1987, LMS received a confirmation of third party general liability (CGL) coverage binding Lloyd's from June 1, 1987, until June 1, 1988.
On October 2, 1987, an employee of LMS negligently damaged a 30 ton Grove hydraulic crane (a cherry picker), which Nichols Construction Corporation had leased to Occidental. LMS paid the damage of $98,115.94. The settlement recites that an LMS employee was operating the crane on Occidental's premises. Lloyd's denied coverage based on a policy exclusion for property in the care, custody and control of the insured (Exclusion K), although agent Baglow advised Lloyd's that Exclusion K was not a viable defense.
The insurance policy provides general liability coverage and contractual liability coverage. The general liability coverage excludes property in the care, custody or control of the insured (Exclusion K). In the policy's contractual section, there is a substitute exclusion for tools or equipment being used by the insured.
Neither North Star nor LMS ever received a copy of the insurance policy. Victor H. Barousse was employed by Lloyd's to adjust the claim. Barousse, who has *1252 over 25 years of insurance experience, advised the London brokers on November 10, 1987, that Lloyd's was liable for the loss, a "100% loser". Subsequently, Barousse questioned whether Lloyd's could rely on Exclusion K, because no insurance policy was ever issued to LMS. Lloyd's admitted that it did not give LMS a copy of the insurance policy prior to the filing of this lawsuit.
Despite the advice of both agent Baglow and adjuster Barousse, Lloyd's continued to deny the claim on the basis of Exclusion K (September 10, 1988, Exhibit 23). LMS filed this suit on September 13, 1988, nearly a year after the accident. Lloyd's persisted in its reliance on Exclusion K after suit was filed (December 2, 1988, Exhibit 25).
After receiving 1990 opinions from two insurance experts, Lloyd's abandoned its reliance on Exclusion K (care, custody and control). Lloyd's stated on July 12, 1990, that it was no longer relying on Exclusion K. Lloyd's judicially admitted that it was relying solely on the exclusion for tools or equipment used by the insured. Lloyd's asserts that there is no jurisprudence interpreting the tools or equipment exclusion.
One of Lloyd's experts, J. William Sherar, noted the confusion and lack of clarity in the printed forms but concluded that the loss was excluded as equipment being used by the insured. A second expert, Robert W. Breeden, Jr., agreed, noting that Exclusion K was deleted in the comprehensive endorsement to the policy. Breeden testified in deposition that he could not have given an opinion on the policy's coverage without reference to its terms.
LMS filed this suit against the Lloyd's underwriters, North Star and Baglow. The trial court gave LMS a summary judgment, finding coverage under the policy and casting the various underwriters according to their percentage participations. The court of appeal reversed the summary judgment. 600 So.2d 1335 (La.App. 5th Cir.1992). A writ was granted to review the judgment of the court of appeal. 609 So.2d 238 (La.1992).

LAW

Coverage
Any ambiguity in an insurance policy is construed against the insurer. LSA-C.C. art. 2056; Smith v. Matthews, 611 So.2d 1377 (La.1993); Breland v. Schilling, 550 So.2d 609 (La.1989); Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958); Snell v. Stein, 261 La. 358, 259 So.2d 876 (1972). Policy ambiguities are construed in favor of coverage. RPM Pizza, Inc. v. Automotive Cas. Ins. Co., 601 So.2d 1366 (La.1992); Creole Explorations, Inc. v. Underwriters at Lloyd's, 245 La. 927, 161 So.2d 768 (1964). Policy exclusions must be clearly stated. LSA-C.C. art. 2057; Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987). Any ambiguity in an insurance policy's exclusions is construed to afford coverage. Garcia v. St. Bernard Parish School Bd., 576 So.2d 975 (La.1991); Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1953). The insurer has the burden of proving that a loss comes within a policy exclusion. Capital Bank & Trust v. Equitable Life, 542 So.2d 494 (La.1989); Lado v. First Nat. Life Ins. Co., 182 La. 726, 162 So. 579 (1935).
LSA-R.S. 22:628 mandates written insurance contracts. LSA-R.S. 22:634 provides that every policy shall be delivered to the insured within a reasonable time after its issuance. The statutes require that an insured be informed of a policy's contents. See Jones v. Breaux, 289 So.2d 110 (La.1974). Notice of any exclusionary provisions is essential because the insured will otherwise assume the desired coverage exists. See Spain v. Travelers Insurance Company, 332 So.2d 827 (La.1976). Also see Kippen v. Farm Bureau Mutual Insurance Company, 421 N.W.2d 483 (N.D.1988); Tonkovic v. State Farm Mut. Auto Ins. Co., 513 Pa. 445, 521 A.2d 920 (1987); Farmers Ins. Exchange v. Call, 712 P.2d 231 (Utah 1985); General Motors Acceptance Corp. v. Martinez, 668 P.2d 498 (Utah 1983); Ranger Insurance Company v. Phillips, 25 Ariz.App. 426, 544 P.2d 250 (1976); and Preferred Risk Mut. Ins. Co. v. Thomas, 372 F.2d 227 (4th *1253 Cir.1967). Insurance policy exclusions are not valid unless clearly communicated to the insured. Spain, supra. Also see Moore v. Energy Mutual Insurance Company, 814 P.2d 1141 (Utah 1991), and Barrette v. Casualty Co. of America, 79 N.H. 59, 104 A. 126 (1918).

Penalties
LSA-R.S. 22:658 provides that a penalty of twelve percent, together with reasonable attorney's fees, shall be assessed when an insurer's failure to pay a claim is arbitrary and capricious or without probable cause.
"Vexatious refusal to pay" means unjustified, without reasonable or probable cause or excuse. Couch on Insurance 2d, § 58:70. "Vexatious refusal to pay may be found from the fact that the insurer, prior to suit, abandoned its original ground for refusing to pay, defended on a different ground, and lost." Couch, § 58:185, vol. 15A, p. 453. See Third Nat. Bank v. Yorkshire Ins. Co., 218 Mo.App. 660, 267 S.W. 445 (1924), and Jurkiewicz v. Millers' Nat. Ins. Co., 229 Mo.App. 262, 76 S.W.2d 721 (1934).
The Louisiana phrase, "arbitrary, capricious, or without probable cause," is synonymous with "vexatious". Both describe an insurer whose willful refusal of a claim is not based on a good faith defense. See Phillip Rosamond Drill. Co., Inc. v. St. Paul F. & M.I. Co., 305 So.2d 630 (La.App. 2nd Cir.1974).

CONCLUSION
Since Lloyd's failed to comply with the statutory requirement of delivery, it could not rely on its policy exclusions. Both the agent and an independent adjuster advised Lloyd's that there was coverage under the policy.
J. William Sherar, Lloyd's expert, said the policy's use of multiple standard printed forms is confusing. Insurance coverage exclusions must be clear and unambiguous. Because Lloyd's own expert described this policy as unclear, it is, at best, ambiguous. The ambiguity must be resolved against the insurer.
The trial court correctly concluded that Lloyd's was liable under the contractual liability coverage, which covered property damage relating to the insured's performance under the written contract. The trial court noted that Baglow was furnished a copy of the LMS/Occidental contract before he procured the insurance. The contract required blanket insurance to cover LMS's indemnity obligations under its hold harmless agreement with Occidental. LMS received a binder for the requested insurance and accepted the agent's representation that it had coverage. LMS reasonably assumed that its liability under the contract was covered.
Lloyd's ignored the advice of the agent who purchased the policy. Despite being advised by the agent that Exclusion K was not in the contractual indemnity portion of the insurance contract, Lloyd's continued to rely on Exclusion K. After Lloyd's independent adjuster conducted an investigation, Barousse told the insurer that LMS had never received the insurance contract and Lloyd's could not rely on Exclusion K. Lloyd's knew that Exclusion K was not a valid defense, particularly since LMS had never seen the policy.
Lloyd's claimed one exclusion and then another. LMS was not informed of either exclusion before suit was filed. Lloyd's later admitted that Exclusion K, its only defense prior to suit, did not apply to the claim. One indicia of bad faith is an insurer's belated change in defenses. Lloyd's did not handle this claim in good faith.
Lloyd's ignored the advice of its agent and its adjuster and adhered for two years to an indefensible position, which it abandoned after suit was filed in favor of an erroneous but slightly more credible position. Whether an insurer has been arbitrary and capricious is generally a question of fact. However, the trial court here erred in not assessing penalties and attorney's fees for the insurer's misinterpretation of its undelivered policy. Lloyd's failure to pay was arbitrary, capricious and without probable cause.
*1254 For the foregoing reasons, the judgment of the court of appeal is reversed. The judgment of the trial court is reinstated and amended to award statutory penalties and attorney's fees. The case is remanded for the trial court to fix appropriate penalties and attorney's fees.
REVERSED AND REMANDED.
LEMMON, J., recused.
HALL, J., dissents and assigns reasons.
HALL, Justice, dissenting.
I respectfully dissent. The judgment of the court of appeal should be affirmed.
This case presents a straight-forward coverage issue readily resolved by the unambiguous language of the insurance policy. Under the comprehensive general liability policy, as amended by the broad form comprehensive general liability endorsement, the insurer agreed to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury or (B) property damage. In this case, the insured became legally obligated to pay damages because of property damage to a cherry picker, an item of heavy equipment, which was damaged while being used by the insured in performing its operations. Expressly excluded from property damage liability coverage is damage "to tools or equipment while being used by the insured in performing his operations." This exclusion, contained in the broad form endorsement, replaced and narrowed an exclusion contained in the basic policy which excluded "property in the care, custody or control of the insured, or as to which the insured is for any purpose exercising physical control." Still, the exclusion is perfectly clear and excludes coverage for damage to equipment while being used by the insured in performing its operations, the precise situation presented in this case.
The insured's argument that the property damage exclusion does not apply to contractually assumed liability is without merit. The basic policy contains an exclusion which provides that the insurance does not apply to liability assumed by the insured under any contract or agreement except an incidental contract. The broad form endorsement narrowed the exclusion by broadening the definition of an incidental contract. There is no contention in this case that the loss is excluded under the contractual liability exclusion. Nevertheless, coverage for property damage, whether based on contractually assumed liability or delictual responsibility, is subject to the express exclusions contained in the policy relating to property damage.
The majority opinion finding coverage seems to rely in part on a finding that a copy of the policy was never delivered to the insured. The insured makes no argument in that regard and raises no issue about lack of delivery or lack of knowledge of the contents of the policy in this court. The court of appeal's opinion reflects that the liability policy from Lloyds was issued effective June 1, 1986 to June 1, 1987, and renewed for the period June 1, 1987 to June 1, 1988, in which latter period the loss was sustained.
For these reasons, I would affirm the judgment of the court of appeal.
NOTES
[*] Justice Lemmon recused.