981 So.2d 696 (2008)
Regina Soniat TALTON, Succession of Regina D. Soniat, Sydney Loughlin Clarke, and Kearney Soniat Loughlin, Individually and on Behalf of his Minor Son, Sidney Soniat Loughlin
v.
USAA CASUALTY INSURANCE COMPANY, United Services Automobile Association, Chuck Collins, and Don Pisoni.
Consolidated with Succession of Regina D. Soniat, et al.
v.
United Services Automobile Association.
Nos. 2006-CA-1513, 2007-C-1414.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 2008.
*699 Kearney S. Loughlin, Metairie, LA, for Plaintiffs.
Timothy G. Schafer, Stacey E. Stringer, Schafer & Schafer, New Orleans, LA, for United Services Automobile Association.
C. David Vasser, Jr., Vasser & Vasser, Baton Rouge, LA, for Chuck Collins.
(Court composed of Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS SR., Judge MICHAEL E. KIRBY, Judge, MAX N. TOBIAS JR., and Judge EDWIN A. LOMBARD).
*700 MAX N. TOBIAS, JR., Judge.
The plaintiffs/appellants, Regina Soniat Talton ("Ms. Talton"), Succession of Regina D. Soniat ("Soniat"), Sydney Loughlin Clarke ("Ms. Clarke"), and Kearney Soniat Loughlin ("Mr. Loughlin"), individually and on behalf of his minor son, Sidney Soniat Loughlin (hereinafter collectively referred to as the "appellants"), appeal from a jury verdict rendered in their favor and against the defendants, USAA Casualty Insurance Company ("USAA-CIC") and United Services Automobile Association (hereinafter collectively referred to as "USAA"). The appellants argue, inter alia, that (a) the damages awarded by the jury are insufficient considering the evidence presented at trial and (b) the jury erred in failing (i) to find that USAA acted in bad faith and (ii) to award damages accordingly.

FACTS
This case concerns damages caused by Hurricane Katrina ("Katrina") on 29 August 2005 to a dwelling at 1202-04 State Street, New Orleans, and its contents belonging to the appellants. Prior to Katrina, the dwelling devolved from Soniat to her daughter, Ms. Talton, and her grandchildren, Ms. Clarke and Mr. Loughlin. The structure housed a main residence (1204) and an apartment (1202) under one roof. USAA issued a homeowner's policy to Soniat covering the dwelling, and a renter's policy to Mr. Loughlin, who lived with his wife ("Mrs. Loughlin") and newborn son in the apartment. At the time of the storm, Ms. Talton resided in Tennessee; Mr. Loughlin and Ms. Clarke, who lived in New Orleans, had evacuated to Jarreau, Louisiana.
Within two days after the storm, one of the appellants called USAA to inform that the dwelling had been in harm's way. After Mr. Loughlin came to New Orleans on 5 September 2005, Ms. Clarke called USAA the next day to advise that the premises had in fact been damaged.
By mid-September, Christopher Schwartz ("Mr. Schwartz"), a USAA contents adjuster, spoke with Mr. Loughlin and set an appointment to visit the premises. The meeting was postponed because of the mandatory evacuation ordered in advance of Hurricane Rita ("Rita"). After Rita made landfall on 24 September 2005, Mr. Schwartz contacted Mr. Loughlin and again made arrangements to inspect the premises. On 29 September 2005, Mr. Schwartz and Jeanine Templeton, a contents adjuster trainee, arrived at 1202-04 State Street for the purpose of determining the contents losses under both the homeowner's and renter's policies. Mr. Schwartz inspected and photographs both the main residence and the apartment.
On 7 September 2005, Ms. Talton called USAA and requested a copy of the homeowner's policy. She received a copy of the declarations page and a few endorsements on 20 September 2005. Ms. Talton contends that she called USAA that same day and made another request for the policy but never received a response.
On 12 October 2005, Charles Collins ("Mr. Collins") of Allcat Claims Service (an independent adjusting company retained by USAA), arrived at the dwelling to appraise the damage. Because of the height of the roof and lack of internal access, Mr. Collins could not fully inspect the premises, especially the roof. He told Mr. Loughlin that he would arrange for a roofer to do so.
Mr. Collins met Christian Larson ("Mr. Larson"), a roofing salesman for CMR, a roofing company, on another job. At this time, roofers were scarce in the metropolitan New Orleans area because of the amount of damage in the city. Mr. Collins *701 asked Mr. Larson, who had a forty-foot ladder, if he would inspect, measure, and photograph the roof. No payment was made for this service, which took approximately an hour. Mr. Larson undertook the work in hopes of obtaining the contract for repairs on behalf of CMR.
On 15 November 2005, Mr. Larson gained access to, measured, and photographed the roof. He sent his photographs, a diagram made from the measurements, and a CMR proposal to replace all roofs (the shingled, copper seam, and flat ones on the main dwelling, and the shingled one on the back storage house) to Mr. Collins.
Meanwhile, Ms. Talton called USAA on 31 October 2005 and again requested the policy. In November, she received USAA's response, which was another copy of the declarations page. In early November, Ms. Talton obtained proposals from Mortenson Roofing and Greentree Construction to replace the roof. On 23 November 2005, Mr. Loughlin facsimile transmitted the Mortenson Roofing, but not the Greentree Construction, proposal to USAA.
Mr. Collins, who was paid a percentage on the basis of the amount of his appraisal (the amount paid to the insured), determined from Mr. Larson's photographs that the copper seam and flat roofs did not have to be replaced. Using the information he gathered as well as that provided by Mr. Larson, Mr. Collins completed his appraisal on Thanksgiving Day, 24 November 2005.
In preparing his appraisal, Mr. Collins used Xactimate, a computer program. Don Pisoni ("Mr. Pisoni"), a USAA catastrophe team leader, testified that Xactimate was a construction-estimating program that adjusters used as a starting point to determine the cost to repair damages. Mr. Collins explained that without Xactimate, every appraiser could make his own pricing assessments. Wesley Barber ("Mr. Barber"), a USAA staff adjuster, admitted that Xactimate was not perfect, but if the prices were incorrect, USAA used the local market to determine value. As a team leader, Mr. Pisoni had the authority to make changes in pricing when he felt that something was not right and could deviate from the computer program.
On 25 November, Mr. Collins delivered his appraisal to Mr. Pisoni, who was then at the USAA office in Baton Rouge. On that same Thanksgiving weekend, Mr. Pisoni was in charge of moving the USAA office from Baton Rouge to Gretna, Louisiana. The Gretna office opened on Monday, 28 November 2005.
On 30 November 2005, Mr. Loughlin went to the Gretna office, met Mr. Pisoni, and asked for a copy of the appraisal. Mr. Pisoni complied, but because he had not reviewed the appraisal, he wrote on Mr. Loughlin's copy that it was not an accepted settlement. Mr. Loughlin quickly reviewed the appraisal and complained about the amount. Mr. Pisoni stated that if he was not satisfied, a re-inspection by a USAA appraiser would be arranged. However, Mr. Pisoni did not know when the re-inspection would take place because he did not control the appraiser's schedule.
The appellants filed the instant lawsuit two days later. On 19 December 2005, USAA issued a check in the amount of $70,131.31, representing Mr. Collins' appraisal valuation less the deductible. Mr. Loughlin complained that because of the delay, the dwelling had sustained additional damage from rain in November and particularly on 14 December 2005. When Mr. Barber reappraised the loss on 29 March 2006 for USAA, he treated all of the existing damage as Katrina related *702 and included it in his appraisal. Because of additional claims by Mr. Loughlin (that Katrina made the exterior paint peel and damaged the electrical system), Mr. Barber sought the opinions of electrical and structural engineers.
Those experts inspected the dwelling on 6 May 2006. The electrical engineer found that the electrical system had not been damaged. However, because of the damage to the plaster ceilings and walls, the existing knob and tube wiring had to be replaced to meet code. The structural engineer found that the peeling paint and areas of rust on the exterior of the house were due to normal weathering and not Katrina. The engineering reports were received by Mr. Barber in late May 2006. He completed his damage appraisal in mid-July, and USAA issued a supplemental check on 31 July 2006 in the amount of $169,197.86. This tender was based on Mr. Barber's report in which he valued the total damage to the appellants' structure at $244,197.86.
Mr. Loughlin was also paid his policy limits, $50,800.00, under the renter's policy for damages to his personal property, although he never submitted any receipt or other document to substantiate any of the listed items. Mr. Loughlin was also reimbursed the sum of $12,000.00 for the cost of moving and storage of personal property during repairs to the dwelling.[1]
Trial began on 28 August 2006. The appellants had previously retained Warren McKenna ("Mr. McKenna") as co-counsel to conduct the direct examinations of Mr. and Mrs. Loughlin. Mr. Loughlin was going to represent all appellants, including conducting voir dire and all other aspects of the trial.
On the morning of trial, the trial court ordered that Mr. Loughlin could not represent himself or his family at trial. Instead, the court appointed Mr. McKenna as sole trial counsel. Mr. McKenna conducted voir dire and jury selection. The record reflects that Mr. Loughlin was present at all times.
The appellants filed an emergency handwritten writ application to this court. Later that day, this court granted the writ application, recognizing the appellants' right to have counsel of their choice. The case then proceeded with Mr. Loughlin's participation until the jury reached a verdict on 7 September 2006. During trial, the court granted a directed verdict dismissing the appellants' claims under La. R.S. 22:1220 B(1) because insufficient evidence had been presented to sustain them.
The jury found that the appellants' dwelling sustained damages totaling $244,029.17, the exact amount determined by Mr. Barber. The jury found that USAA's payment of $70,131.31 was made within thirty days after being presented with a satisfactory proof of loss. By contrast, the jury found that USAA's payment of $169,197.96 was made over thirty days after being presented with a satisfactory proof of loss, but found that USAA was not arbitrary, capricious, or without probable cause in failing to pay sooner. Finally, the jury found that USAA timely initiated loss adjustment of the appellants' claim.
On 9 September 2006, the trial court signed a judgment that was nominally in favor of the appellants in the amount of $244,029.17, subject to a credit in favor of USAA for the same amount, representing prior payments and the insurance policy's deductible. The judgment also awarded *703 the appellants judicial interest on the sum of $169,197.86, from thirty days after the date of the proof of loss to the date of the payment on 31 July 2006, with each of the parties to bear their own costs.
On 12 September 2006, the trial court rendered a judgment holding Mr. and Mrs. Loughlin in contempt of court and ordered them to pay a fine of $1000.00.

ASSIGNED ERRORS
The appellants have assigned the following errors for our review.
1. The district court erred in denying the appellants their choice of counsel and the right to self-representation.
2. The district court erred in denying the appellants their statutory right to voir dire.

3. The district court erred in preventing the appellants from introducing evidence of their good character after their character had been attacked by USAA.
4. The jury erred in disregarding uncontroverted evidence of the appellants' damages and of USAA's bad faith.
5. The district court erred in granting a directed verdict in favor of USAA, finding that the appellants did not produce sufficient evidence to support their claims under La. R.S. 22:1220 B(1).
6. The district court erred in precluding the appellants from introducing evidence supporting their claims under La. R.S. 22:1220 B(1).
7. The district court erred in denying the appellants' motion to compel USAA's production of documents in its underwriting and claims files, including reserve information.
8. The district court erred in holding Mr. and Mrs. Loughlin in contempt of court.
9. The district court erred in ordering the appellants to pay USAA's electrical engineer $300.00 per hour for his deposition testimony.
10. The district court erred in granting the motion for summary judgment filed by Mr. Collins and in denying the cross-motion for partial summary judgment filed by the appellants.

I.
The first two assignments of error concern the trial court's refusal to permit Mr. Loughlin to represent himself and his family at trial. On the first day of trial Mr. McKenna introduced himself and Mr. Loughlin to the venire as trial counsel; however, the trial court interrupted to state that only Mr. McKenna would be representing the appellants. As a result, Mr. McKenna conducted voir dire, with Mr. Loughlin present. A handwritten writ application was filed by the appellants with this court as to whether Mr. Loughlin could act as counsel; this court agreed and said he could. The next day, Mr. Loughlin took over trying the case.
The appellants argue that they were prejudiced as a matter of fact and law by the trial court's actions. In particular, the appellants contend that Mr. McKenna was not prepared to conduct voir dire, and, therefore, did not object to certain statements and/or questions posed by USAA's counsel.
We find no merit to the appellant's argument. We find no evidence indicating that Mr. McKenna was incompetent in his conducting of voir dire. In addition, Mr. Loughlin was present throughout the proceeding and could have asked Mr. McKenna to object or ask additional questions. The record reflects no evidence that the appellants were prejudiced as a result of the trial court's ruling, even though we *704 granted the writ application, reinstating Mr. Loughlin as counsel.

II.
The appellants also argue that the trial court allowed Mr. Loughlin's character to be called into question. The record reveals the following exchange:
MR SCHAFER [counsel for the appellees]: Do you believe that there are some individuals that you just can't work with?
THE PROSPECTIVE JURORS: Yes.
MR SCHAFER: And do you think that it is wrong to deal with an insurance companies [sic] on a basis that is other than honest?
The prospective jurors were not given a chance to answer the second question as Mr. Schafer immediately segued into questions concerning prejudices the venire might have about insurance companies. However, because of the statements above, the appellants assert that they were later prevented from rebutting USAA's attacks.
Again, we find no merit in the appellants' assertions and fail to view the objected testimony as an attack on Mr. Loughlin.[2] In addition, we note that the trial court instructed the jury prior to opening arguments that the statements and arguments of counsel were not evidence and that "[u]nder no circumstances are you to consider [a] lawyer's statement as evidence in this case." This instruction would also include all questions and statements made during voir dire by either side.

III.
Next, the appellants argue that the jury ignored uncontroverted evidence of their damages and of USAA's bad faith. The trial testimony contains many instances of conflicting testimony. For example, USAA presented the testimony of Van Eugene Fisher, a structural engineer. Mr. Fisher was hired to inspect the appellants' dwelling to address peeling paint and rusty metal on the residence and determine whether it was caused by Katrina. Mr. Fisher testified that all of the peeling paint and rust were as the result of normal weathering.
On rebuttal, the appellants presented the testimony of Alexandro Tefel, a mechanical engineer, who was qualified to testify as an expert painter. Mr. Tefel also inspected the dwelling and testified that some of the peeling paint and rusty metal was caused by Katrina.
The roof damage was a hotly contested issue. The appellants have continually argued that it was USAA's policy to replace asbestos shingle roofs with slate roofs. The testimony of Mr. Pisoni is to the contrary; he testified that to replace an asbestos roof with natural slate was an upgrade. The roof in question consisted of Dutch lap asbestos shingles, which according to David Hinkley ("Mr. Hinkley"), who testified as a roofing expert, was the most inferior of asbestos shingle roofs. Everyone who testified agreed that asbestos shingles were no longer available, so USAA instructed its adjusters to use slate for pricing a replacement roof.
Mr. Barber testified that entering slate in Xactimate for pricing purposes did not mean that slate was the proper or closest replacement for asbestos shingles. Mr. Hinkley explained that natural slate is a product far superior to asbestos shingles, and, in his opinion, a comparable roof *705 would be a 30-year laminated shingle. In fact, Mr. Greentree of Greentree Construction who replaced the roof, installed a 50-year shingle roof, a comparable product to the roof previously existing on the dwelling.[3]
The standard of appellate review of a jury's factual findings is well-settled and has long been established in this state. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." The Supreme Court set forth a two-part test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993). On appeal, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
In light of the numerous instances of conflicting testimony concerning the appellants' damages and the cost of repairs, we cannot say that the jury was clearly wrong or manifestly erroneous in its award of damages. That is to say, a preponderance of the evidence can be understood to establish USAA's defense.

IV.
The appellants also argue that the jury ignored uncontroverted evidence of USAA's bad faith. In particular, this assignment of error concerns USAA's alleged failure to adhere to the time requirements found in La. R.S. 22:658, which provides in pertinent part:
A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, 657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
* * *
(3) Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant. In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.
(4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a *706 written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4), respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due[.] [Emphasis added].
La. R.S. 22:1220 states, in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
* * *
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. [Emphasis added.]
The jury found that USAA timely initiated its loss adjustment within thirty days after notification of the loss by the claimant. See La. R.S. 22:658 A(3). The appellants contend that the jury was manifestly erroneous in reaching this conclusion.
To initiate loss adjustment requires that "`the insurer take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim.'" Hollier v. State Farm Mut. Auto. Ins. Co., 01-0592, p. 4 (La.App. 4 Cir. 10/31/01), 799 So.2d 793, 797, quoting McClendon v. Economy Fire & Cas. Ins. Co., 98-1537, p. 7 (La.App. 3 Cir. 4/7/99), 732 So.2d 727, 731. Merely opening a file on a claim does not satisfy the statutory requirements. Hollier, 01-0592, p. 5, 799 So.2d at 797.
Two or three days after the storm, Mr. Loughlin called USAA to report that the dwelling was probably damaged, but that he had not yet returned to New Orleans. An actual damage claim was reported to USAA on 6 September 2005 by Ms. Clarke. By mid-September, Mr. Schwartz called Mr. Loughlin to set a date to inspect 1202-04 State Street. The scheduled meeting was cancelled due to the evacuation ordered for Rita, which made landfall on 24 September 2005.
After the city reopened, Mr. Schwartz met Mr. Loughlin at the dwelling (on 29 *707 September 2005). At the visit, Mr. Schwartz had open files on both the main dwelling and the apartment; he inspected and photographed the contents of both properties. USAA contacted Mr. Loughlin on 3 October 2005 to set up an appointment for the dwelling adjuster to inspect the property. After several conversations between Mr. Collins and Mr. Loughlin, Mr. Collins inspected the property on 12 October 2005.
Based on the evidence presented at trial, we find that the jury had a reasonable basis for finding that USAA timely initiated the loss adjustment.
The jury also found that USAA made its first payment of $70,131.31 within thirty days of receiving a satisfactory proof of loss, a finding that the appellants argue is manifestly erroneous. The appellants contend that the first payment on 19 December 2005 was made over sixty days after Mr. Collins inspected the house on 12 October 2005.
La. R.S. 22:658 is a penal statute, and must be strictly construed. Vaughn v. Franklin, 00-0291, p. 15 (La. App. 1 Cir. 3/28/01), 785 So.2d 79, 91. It subjects an insurer, when it is arbitrary and capricious in failing to unconditionally tender an undisputed amount within thirty days of satisfactory proof of loss, to the mandatory imposition of penalties and attorney fees for the collection of such loss. See Calogero v. Safeway Ins. Co. of La., 99-1625, p. 7 (La.1/19/00), 753 So.2d 170, 174. A "satisfactory proof of loss" is that which is sufficient to fully apprise the insurer of the insured's claim. McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1089 (La.1985).
In Sevier v. U.S. Fid. & Guar. Co., 497 So.2d 1380, 1384 (La.1986), the Court stated:
The cases under section 658 [of title 22] have demonstrated that "proof of loss" is a flexible requirement to advise the insurer of the facts of the claim. Austin v. Parker, 672 F.2d 508, 520 (5th Cir.1982); Spalitta v. Hartford Fire Insurance Co., 428 So.2d 824, 827 (La.App. 5th Cir.1983); Riverland Oil Mill, Inc. v. Underwriters for Lloyd's, New York, 368 So.2d 156, 163 (La.App. 2d Cir.), writ denied, 369 So.2d 1365 (La.1979). The proof of loss is not required to be in any formal style. Gatte v. Coal Operators Casualty Co., 225 So.2d 256, 258 (La.App. 3d Cir.1969), rev'd on other grounds, 256 La. 325, 236 So.2d 485 (1970) (citing Moore v. St. Paul Fire & Marine Insurance Co., 193 So.2d 882 (La.App. 3d Cir.1967)). As long as the insurer receives sufficient information to act on the claim, "the manner in which it obtains the information is immaterial." Austin v. Parker, 672 F.2d at 520.
Although Mr. Collins made his initial inspection on 12 October 2005, he had to obtain the services of a third party to inspect the roof because of the roof's height and the lack of internal access. The roof inspection was made on 15 November 2005. The appraisal was completed by Mr. Collins on 24 November 2005 and given to his supervisor the next day. Mr. Loughlin saw the appraisal in Mr. Pisoni's office on 30 November 2005. The jury made a finding of fact that the payment was made within thirty days of the receipt of a satisfactory proof of loss. After reviewing the record, we do not find that the jury was manifestly erroneous or clearly wrong in its finding. Their finding was within their discretion.
Finally, the jury found that the second payment of $169,197.86 was made over thirty days from receiving a satisfactory proof of loss, but that the delay by *708 USAA was not arbitrary, capricious, or without probable cause.
In Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250, 1253 (La.1993), the Court stated:
"Vexatious refusal to pay" means unjustified, without reasonable or probable cause or excuse. Couch on Insurance 2d, § 58:70. "Vexatious refusal to pay may be found from the fact that the insurer, prior to suit, abandoned its original ground for refusing to pay, defended on a different ground, and lost." Couch, § 58:185, vol. 15A, p. 453. See Third Nat. Bank v. Yorkshire Ins. Co., 218 Mo.App. 660, 267 S.W. 445 (1924), and Jurkiewicz v. Millers' Nat. Ins. Co., 229 Mo.App. 262, 76 S.W.2d 721 (1934).
The Louisiana phrase, "arbitrary, capricious, or without probable cause," is synonymous with "vexatious". Both describe an insurer whose willful refusal of a claim is not based on a good faith defense. See Phillip Rosamond Drill. Co., Inc. v. St. Paul F. & M.I. Co., 305 So.2d 630 (La.App. 2nd Cir.1974).
The burden is on insured to prove arbitrariness, capriciousness, or lack of probable cause. Sanders v. Wysocki, 92-1190, p. 8 (La.App. 4 Cir. 1/27/94), 631 So.2d 1330, 1335. A factfinder's conclusion regarding statutory penalties and attorney fees for an insurer's bad faith denial of a claim is in part a factual determination which should not be disturbed unless it is manifestly erroneous. U.S. Fid. & Guar. Co. v. Hussain, 99-2515, p. 6 (La.App. 4 Cir. 8/2/00), 775 So.2d 27, 31.
As a result of the additional damage to the dwelling caused by the November and December 2005 rains, a new inspection and appraisal became necessary. In addition, USAA was required to consult an electrical engineer and a structural engineer to fully inspect the dwelling for damages. Mr. Barber, USAA's adjuster, received their reports on 25 May 2006, at which time additional calculations were necessary in order to complete the appraisal.
No dispute exists that Mr. Barber's estimate was not completed until 17 July 2006. Mr. Barber testified that the delay was caused by the number of cases he was handling, the massive amount of destruction, and the complexity of the appellants' claim. The second dwelling payment check was issued on 31 July 2006.
The jury heard all of the evidence and made a factual determination that the delay in payment was justified and reasonable. We do not find that the jury was manifestly erroneous in making this finding. Their decision was within their discretion. This assignment of error is without merit.

V.
The next two assignments of error concerns district court's grant of a directed verdict in favor of USAA, finding that appellants did not produce sufficient evidence to support their claims under La. R.S. 22:1220 B(1). They contend that this error was compounded by the trial court refusal to allow them to introduce evidence to support their claim.
La. R.S. 22:1220 provides in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

*709 B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue. [Emphasis added.]
The appellants point to alleged instances whereby USAA made untrue statements and failed to divulge pertinent facts and policy provisions throughout the adjustment period. In particular, the appellants contend that La. R.S. 22:1220 B(1) was violated by USAA's refusal to provide them with a complete copy of the insurance policy, failure to inform them of the status of the case, and concealment of evidence reflecting the true extent of damage to the dwelling.
As with La. R.S. 22:658, La. R.S. 22:1220 B(1) is penal in nature and must be strictly construed. Reed v. State Farm Mut. Auto. Ins. Co., 03-0107, pp. 12-13 (La.10/21/03), 857 So.2d 1012, 1020.
First, we find that the failure to provide the appellants with a complete copy of the homeowner's policy does not violate the statute.[4] At no time did USAA deny coverage or misrepresent the amount of coverage available. When the appellants sought reimbursement for items outside coverage, USAA sent the relevant portions of the policy. While we appreciate the appellants' frustration with this process, it does not violate the literal terms of La. R.S. 22:1220 B(1).
The appellants rely on McGee v. Omni Ins. Co., 02-1012 (La.App. 3 Cir. 3/5/03), 840 So.2d 1248 for the proposition that the statute is violated by USAA's failure to regularly communicate with them and keep them advised of the status of the claim. In McGee, Omni was the liability insurer of the plaintiff, who was cast in judgment in excess of her policy limits after Omni refused to settle within those limits. The court stated:
Misrepresentation can occur when an insurer either makes untrue statements to an insured concerning pertinent facts or fails to divulge pertinent facts to the insured. Both occurred in this case. As pointed out by the trial court in its reasons for judgment, Omni misrepresented the terms of its policy by informing Ms. Bellard that she would be responsible for any interest award, even after judgment. Additionally, Omni consistently failed to communicate the status of the claim to Ms. Bellard on a regular basis and, when it did communicate, failed to communicate the pertinent facts necessary for Ms. Bellard to consider in determining what was in her personal interest.
Even assuming, for purposes of argument, that all of the legal advice concerning settlement obtained by Omni was inaccurate, Omni took no steps to communicate to Ms. Bellard that she could be relieved of potential excess liability by simply paying a small amount of interest. In other words, because of Omni's action or inaction, Ms. Bellard was never given the opportunity to mitigate her losses. Omni was clearly in bad faith in handling this claim. It placed its own interests in saving a few dollars of interest ahead of its insured's interest and, in the face of facts overwhelmingly pointing to an excess judgment, ignored the legal advice of its own counsel.
Id. at p. 11, 840 So.2d at 1256.
USAA relies on Strong v. Farm Bureau Ins. Co., 32,414 (La.App. 2 Cir. 10/29/99), *710 743 So.2d 949, for the proposition that the misrepresentation must directly relate to a coverage issue. The court stated:
Ashford arguably misrepresented a pertinent fact about liability; however, she never misrepresented a fact about coverage. The statute requires that the pertinent fact relate to a coverage issue. La. R.S. 22:1220(B)(1). A misrepresentation relating to a coverage issue would involve facts about the policy itself, such as the amount of coverage, lapse or expiration of the policy, or exclusions from coverage.
Id. at p. 5, 743 So.2d at 953.
By examining La. R.S. 22:1220 B(1) and the jurisprudence interpreting the statute, we find McGee inapposite to the facts of this case. The record reflects that USAA was in regular and continuous contact with the appellants and did not misrepresent any fact related to coverage, as delineated by Strong.
Finally, the appellants maintain the USAA concealed evidence regarding the replacement of the roof on the main dwelling structure. The record does not support this argument. However, even if this were true, we find that La. R.S. 22:1220 B(1) would not apply. We cannot expand the clear and unambiguous wording of the statute to include matters not related to coverage.

VI.
The appellants have also argued that they were precluded from introducing evidence to support their claims of bad faith. With regard to this argument, the appellants allege that USAA's attorney, Timothy G. Schafer, engaged in witness tampering, which the trial court held was irrelevant.
The appellants obtained the testimony of Mr. Greentree of Greentree Construction. Greentree Construction was the company that replaced the appellants' roof. Mr. Greentree explained that he had removed an asbestos roof and replaced it with a 50-year asphalt shingle. However, the appellants also wanted Mr. Greentree to testify about a conversation he had several months earlier with Mr. Schafer, in which Mr. Schafer allegedly spoke to him about price gouging taking place in the New Orleans area. After that conversation, Mr. Greentree spoke with Mr. Loughlin, who prepared an affidavit reflecting the conversation for Mr. Greentree's signature. The trial court excluded the affidavit and Mr. Greentree's testimony concerning the conversation from evidence, finding that it had no bearing on the appellants' bad faith claims. The excluded evidence was proffered for our review in accordance with La. C.C.P. art. 1636.
First, no evidence exists to support the claims of witness intimidation. In addition, we do not find that the trial court erred by excluding the evidence. See Strong, supra. Further, a trial court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal unless an abuse of that discretion is found Boykins v. Boykins, 04-0999 (La.App. 4 Cir. 4/24/07), 958 So.2d 70. We find no such abuse of discretion in the case at bar.

VII.
The appellants contend that the trial court erred by disallowing discovery of USAA's entire claims file that would have proven USAA's bad faith. The appellants filed a writ application with this court, which was granted in part; we ordered USAA to submit its claims file to the trial court for an in camera review. After its review, the trial court ordered USAA to produce items one through ten, thereby *711 finding that the balance of the documents it examined was privileged. The record on appeal includes the excluded documents that were filed under seal.
A trial court has broad discretion in ruling on pre-trial discovery, and an appellate court should not upset such a ruling absent an abuse of that discretion. Moak v. Illinois Central Railroad Co., 93-0783 (La.1/14/94), 631 So.2d 401. This broad discretion includes the right to refuse or limit discovery of matters that are not relevant to the issues. Johnson v. Louisiana Dept.of Labor, Office of Workers' Compensation, 98-0690 (La.App. 1 Cir. 5/14/99), 737 So.2d 898. We have reviewed the documents in question and conclude that the trial court did not abuse its discretion by excluding the documents.
The standard of review on appeal of a directed verdict is whether reasonable persons could not reach a contrary verdict under the evidence. Davis v. Bd. of Supervisors of Louisiana State University and Agricultural and Mechanical College, 03-2219, pp. 7-8 (La.App. 4 Cir. 11/17/04), 887 So.2d 722, 727. The question to be asked by the appellate court is not whether the plaintiff proved his case by a preponderance of the evidence, but rather, whether upon reviewing the evidence submitted, the court could conclude that reasonable persons could not have reached a verdict in favor of the plaintiff. Id. The appellate court also must determine if the record supports the granting of a directed verdict, based not on a credibility determination (a factual issue), but on a sufficiency of evidence determination (a question of law). Id.; Lott v. Lebon, 96-1328, p. 4 (La.App. 4 Cir. 1/15/97), 687 So.2d 612, 616. A directed verdict should be sustained on appeal where the reviewing court would find a jury verdict in favor of the party opposing the motion to be manifestly erroneous had the trial judge allowed the case (or issue) to go to the jury. Wichser v. Trosclair, 99-1929, p. 5 (La.App. 4 Cir. 2/28/01), 789 So.2d 24, 27.
After reviewing the testimony presented at trial, we find that the trial court correctly granted the directed verdict on this issue at the close of the appellants' case-in-chief. Consequently, we find that all assignments of error related to La. R.S. 22:1220 B(1) are without merit.[5]

VIII.
The appellants next argue that the trial court erred in refusing to instruct the jury that there were two occurrences implicating two policy provisions. At trial, the appellants attempted to offer evidence that the 14 December 2005 rainstorm was a second occurrence under the USAA policy. USAA objected because the pleadings did not include any claim for a second occurrence on that date.
During trial the parties discussed this issue with the trial court outside the presence of the jury:
MR. SCHAFER: I made an objection to the introduction of photographs and testimony regarding their [sic] being another occurrence on December 14, because I did not want the plaintiffs to claim that that constituted an expansion of the pleadings . . . What happened in December was a continuation of the result of the damage originally caused by Hurricane Katrina, and it so far has been *712 treated accordingly . . . And I think the Judge understands this accordingly, that the claims in this case and damages that they are alleging all stem from Hurricane Katrina.
MR. LOUGHLIN: Hurricane Katrina and damages attributable to it's [sic] delay, which is a large portion of this claim, and we've not been granted leave to amend the pleadings to conform other [sic] evidence of other occurrence which is not involved in this lawsuit, which may be a subject of a second lawsuit.
MR. SCHAFER: Well, we'll deal with the second lawsuit when it comes.
MR. LOUGHLIN: But certainly the evidence, as I understand it, the photographs and evidence are coming in to prove delay, not another occurrence, not proof of delay but damages that occurred during November and December which are continuing damage from Hurricane Katrina and as a result of USAA's delay, which is what our allegation is. [Emphasis added.]
Mr. Loughlin's own statements as highlighted and underlined above on his and his clients' behalf demonstrate that the trial court did not err in refusing to instruct the jury that there were two occurrences. We find no merit in this argument.

IX.
The appellants argue that the trial court erred in finding Mr. Loughlin and Mrs. Loughlin (also an attorney-at-law) in contempt of court and assessing them a total fine of $1,000.00 on 12 September 2006. They contend that proper procedures as outlined in La. C.C.P. art. 225 (procedure for punishing one accused of constructive contempt) were not followed. They also maintain that the trial court had previously found that they were not in contempt of court in a judgment dated 17 July 2006.
The record reflects that USAA filed a motion on three issues, one of which sought to hold Mr. Loughlin in contempt of court for failing to comply with the trial court's discovery order. On 26 May 2006, the motion was set for hearing on 23 June 2006. On 8 June 2006, the civil sheriff served the motion and order on Mrs. Loughlin, who was then an attorney of record.
Meanwhile, Mr. and Mrs. Loughlin attempted to dismiss their state court claims against USAA-CIC (asserted under the renter's policy) after they filed a later, identical action in federal court against USAA-CIC. When USAA filed its memorandum opposing the dismissal, the trial court set the hearing on 23 June 2006. Notice of that hearing was also served on Mrs. Loughlin on 8 June 2006.
On 23 June 2006, neither Mr. Loughlin nor Mrs. Loughlin appeared at the hearing. Mr. Loughlin was located in the courthouse and, in open court, stated that neither he nor his wife had been served with notice of a hearing. The trial court accepted the explanation and reset the matter for 29 June 2006. In the meantime, USAA filed an additional contempt motion against Mr. and Mrs. Loughlin.
At the 29 June 2006 hearing, Calvin Smith, the deputy sheriff who served both orders on Mrs. Loughlin, testified, stating that he had made personal service as reflected in his log book and the court records. His log book also reflected a hearing date of 23 June 2006.
Mr. and Mrs. Loughlin again represented in open court that they had not been served with notice of the hearing and presented a copy of one pleading (the motion for contempt) that had been served on Mrs. Loughlin. That pleading did not contain *713 a rule to show cause reflecting a date for the hearing. After a conference in chambers, the Loughlins claimed for a third time that they had no notice of the 23 June 2006 hearing. The trial court gave the Loughlins the benefit of the doubt and dismissed the contempt motion.
When USAA's attorney remembered that Mrs. Loughlin had been served with two notices but only presented one to the court, he filed another motion for contempt, arguing that the motion opposing the dismissal was also served on Mrs. Loughlin on 8 June 2006, but had not presented that pleading to the court. The hearing on the motion was held on 18 August 2006. In connection with the hearing, USAA issued a subpoena to Mr. Loughlin compelling him to produce that certified copy of the order served on Mrs. Loughlin pertaining to the appellants' motion to dismiss.
At the hearing on 18 August 2006, attorney Shavonda R. Williams appeared on behalf of the Loughlins. In compliance with the subpoena, Ms. Williams produced the order that had been served on Mrs. Loughlin on 8 June 2006. Contrary to the Loughlins's assertions, that order showed a hearing date of 23 June 2006. Realizing that it had been lied to on three separate occasions, the trial court found the Loughlins in contempt of court and levied a fine of $1,000.00, presumably $500.00 on each.
La. C.C.P. arts. 222 and 224 address the behaviors that constitute direct and constructive contempt of court, respectively. A direct contempt is:
one that is committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record.
La. C.C.P. art 222. On the other hand, constructive contempt is any contempt other than a direct one, i.e., outside the presence of the court. Once one is found in direct or constructive contempt of court, La. R.S. 13:4611 proscribes the punishment:
(a) For a direct contempt of court committed by an attorney at law, by a fine of not more than one hundred dollars, or by imprisonment for not more than twenty-four hours, or both; and, for any subsequent contempt of the same court by the same offender, by a fine of not more than two hundred dollars, or by imprisonment for not more than ten days, or both;
* * *
(d) For any other contempt of court, including disobeying an order for the payment of child support or spousal support or an order for the right of custody or visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.
After reviewing the trial court's judgment and the transcript attached thereto, we find that the trial court found the Loughlins in direct contempt for the three misrepresentations. The burden of proof in a civil contempt proceeding is by a preponderance of the evidence and appellate review is the manifestly erroneous standard. Lang v. Asten, Inc., 04-1665, p. 12 (La.App. 4 Cir. 3/30/05), 900 So.2d 1031, 1039. In accordance with La. C.C.P. art. 223, the trial court rendered a judgment that recited the facts constituting the contempt, adjudged the Loughlins guilty, and specified the punishment imposed.[6] The trial court was not manifestly *714 erroneous in its finding. However, in light of the direct contempt, La. R.S. 13:4611 proscribes a penalty less than that which the trial court imposed. Because the trial court assessed the maximum fine for constructive contempt, we will assess the maximum fine permitted for direct contempt: $200.00 each for a total of $400.00.

X.
The next assignment of error concerns the expert witness fee awarded to Greg Rogers, USAA's electrical engineer. USAA originally set the fee at $500.00 per hour. The appellants were unhappy with that amount. Therefore, after the deposition, USAA moved the trial court to set the fee; the fee was set at $300.00 per hour.
The appellants contend that the fee should be $215.00 per hour because that is the amount that Mr. Rogers' employer charges USAA to perform inspections. USAA contends that the fee of $300.00 was appropriate and that the trial court did not abuse its discretion.
As with other costs, the trial court enjoys great discretion under La. C.C.P. art. 1920 in the taxing of expert witness fees.[7]Mitter v. Touro Infirmary, 03-1608, p. 11 (La.App. 4 Cir. 4/21/04), 874 So.2d 265, 272; Boseman v. Orleans Parish School Bd., 98-1415, p. 9 (La.App. 4 Cir. 1/6/99), 727 So.2d 1194, 1199. A trial court is not bound by agreements concerning expert witness fees, by an expert's statements concerning his/her charges, or by the actual fee paid to an expert witness. Id. Thus, we cannot say and do not find that the trial court abused its discretion in setting Mr. Rogers' expert witness fee at $300.00 per hour.

XI.
In their final assignment of error, the appellants argue that the trial court erred when it granted summary judgment in favor of Mr. Collins, a direct employee of Allcat Claims Service. Mr. Collins work for USAA's insured, such as the appellants herein, was done under a contract between his direct employer and USAA.
The appellants contend that Mr. Collins is individually liable to them in contract and in tort. The basis for the contract claim is Mr. Collins' alleged "promise" that, based on his inspection of the damaged dwelling, USAA would pay the appellants the policy limits on the homeowner's policy. The appellants contend that by making this "promesse de porte-fort," Mr. Collins obligated himself to pay the appellants the limits of the USAA policy.
The "promesse de porte-fort," derives from La. C.C. art. 1977, which states:
The object of a contract may be that a third person will incur an obligation or render a performance.
The party who promised that obligation or performance is liable for damages if the third person does not bind himself or does not perform.
The 1984 Revision Comments explain in pertinent part:

*715 * * *
(b) This Article contemplates the transaction called promesse de porte-fort: a contract the object of which is an act to be done by another party. A promesse de porte-fort is a security device that resembles suretyship in that the promisor, or porte-fort, is bound only if the third person does not satisfy the obligee, but differs from suretyship in that the promisor never becomes an accessory obligor. For as long as the third person does not bind himself, the promisor remains the sole obligor, and as soon as the third person binds himself the promisor is released.
(c) The promesse de porte-fort must be distinguished from the stipulation pour autrui. In the latter, a third person derives a benefit from a contract made by others. In the former, a third person, by expressing his consent, initially substitutes himself for an intended party to a contract and therefore binds himself.
Under the facts of this case, we find no promesse de porte-fort as alleged by the appellants. No evidence exists to support the contention that Mr. Collins made a promise to the appellants that USAA would pay the policy limits of the homeowner's policy or that he had any authority, real or apparent, to bind USAA to any such promise, even if one were made.[8] In addition, we find that any reliance the appellants may have placed on any initial evaluation made by Mr. Collins, which is not supported by the record, is totally unreasonable.[9]
The appellants also contend that Mr. Collins is liable to them in tort for breaching his duty of care in adjusting the claim and for preparing an inadequate report. However, we find that the appellants have failed to prove the required elements to find Mr. Collins negligent.
In Perkins v. Entergy Corp., 00-1372, p. 7 (La.3/23/01), 782 So.2d 606, 611, the Court set forth the necessary elements to prove negligence:
Under Louisiana jurisprudence, most negligence cases are resolved by employing a duty/risk analysis. The determination of liability under the duty/risk analysis usually requires proof of five separate elements: (1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to *716 conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). Boykin v. Louisiana Transit Co., Inc., 96-1932, pp. 8-9 (La.3/4/98), 707 So.2d 1225, 1230 (citing David W. Robertson et al., Cases and Materials on Torts 83-84 (1989); Fowler v. Roberts, 556 So.2d 1 (La.1989) (on original hearing)). See also Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1991). If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable. See Mathieu v. Imperial Toy Corporation, 94-0952, p. 11 (La.11/30/94), 646 So.2d 318, 326.
We find that the appellants have not proven any of the required elements. In addition, the cases on which they rely are inapposite to the matter before us.
For example, the appellants cite Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007 (La.1993), which involved negligent misrepresentations made in a termite inspection report that was relied on by the purchasers of a home. No such negligent misrepresentations are present in this case. In fact, the record reflects that while Mr. Collins prepared the first damage estimate on the appellants' dwelling, a later appraisal was made after alleged additional damage was done by the November and December 2005 rains. Thus, even if Mr. Collins' conduct was substandard, it was not the cause of the appellants' damages.
The appellants also rely on Alarcon v. Aetna Cas. and Sur. Co., 538 So.2d 696 (La.App. 5 Cir.1989) to support their position. In Alarcon, the plaintiffs sued their homeowner's insurer and its adjuster for tort damages alleging that the adjuster and a contractor retained by him to evaluate the plaintiffs' fire damages undervalued the claim, which resulted in additional damages. However, in Defelice Industries, Inc. v. Harris, 573 So.2d 643, 645 (La.App. 4 Cir.1991), we stated:
Harris contends that Alarcon v. Aetna Cas. and Sur. Co., 538 So.2d 696 (La. App. 5th Cir.1989) supports his position. In that case plaintiff, asserting a claim for a fire loss against Aetna, accused the adjuster of failing to act in good faith and failing to evaluate the claim causing plaintiff medical problems and mental anguish. The court found that plaintiff's breach of contract claim for damages under [La. C.C.] art. 1934(3) was precluded as in Tano [Corp. v. Health Service & Indem., 355 So.2d 604, 606 (La. App. 4th Cir.1978)] and Nelson [v. Allstate Ins. Co., 464 So.2d 1015, 1021 (La. App. 1st Cir.1985)], but found that these cases did not apply to plaintiff's tort claim. The court held that under some circumstances a tort duty to the claimant may exist in the settlement of an insurance claim on the part of the adjuster making the insurer liable under C.C. art. 2315 in the event of a breach of that duty.
We decline to follow Alarcon. First, the Alarcon court misread Tano as dealing only with the art. 1934(3) contract claim and not the tort claim. The Tano court specifically held that plaintiff's art. 2315 claim was excluded by [La. C.C.] art. 1935. Second, this court is bound to follow Tano since it is a decision from this circuit.
The legislature has provided a remedy for the imposition of penalties on the insurer whose failure to pay policy proceeds is found to be arbitrary, capricious, *717 or without probable cause. R.S. 22:658. Consequently, plaintiff is not without remedy if he can prove his allegations. We conclude that the trial court correctly held that plaintiff is not entitled to recover consequential or exemplary damages but is limited to a claim for the policy proceeds together with interest, penalties and attorney fees. [Emphasis added.]
We find that the trial court correctly granted summary judgment in favor of Mr. Collins. The appellants had no valid contract or tort claim against him. Consequently, this assignment of error is without merit.
This appeal was consolidated with an application for supervisory writs filed by the appellants on 31 October 2007, in which the appellants sought to recuse the trial court. See 2007-C-1414. As the trial has taken place, we deny the application as moot. Even if not moot, we do not find the trial judge was required to be recused on the showing made. See La. C.C.P. arts. 153-154.
Based on the foregoing, we affirm in part, reverse in part, and remand the matter to the trial court for further proceeding consistent with this opinion; we further deny the appellants' application for supervisory writs.
AFFIRMED IN PART; AMENDED IN PART; RENDERED; WRIT DENIED.
NOTES
[1] The exact estimate was $11,350.00; Mr. Loughlin originally requested $15,000.00 before USAA asked that he submit the proposal.
[2] Although we need not do so and in fact do not do so, we might take judicial notice of the fact that there are some people that one just can't work with or deal with because they are difficult to work and/or deal with.
[3] The record also reflects that the parties presented conflicting testimony regarding damage to the flat copper roof. The appellants' witnesses said the roof was damaged and needed replacing, while USAA's witnesses said it was not damaged. Testimony is present and establishes that the copper roof was not replaced and did not leak.
[4] We find no evidence that the insureds did not at one time receive and/or possess a copy of all declaration pagers, policies, and endorsements thereto.
[5] The appellants have also alluded to the fact that the trial court's denial of USAA's exception of no cause of action on this same issue somehow taints the directed verdict. It is hornbook Louisiana law that an exception of no cause of action concerns only the allegations in the petition. See La. C.C.P. art. 931. Thus, the trial court appropriately considered the motion for directed verdict once the appellants had rested their case.
[6] La. C.C.P. art. 223 states:

A person who has committed a direct contempt of court may be found guilty and punished therefore by the court forthwith, without any trial other than affording him an opportunity to be heard orally by way of defense or mitigation. The court shall render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed.
[7] La. C.C.P. art 1420 provides:

Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
[8] In Hoffman, Siegel, Seydel, Bienvenu & Centola, APLC v. Lee, 05-1491, p. 11 (La.App. 4 Cir. 7/12/06), 936 So.2d 853, 859-60, writ denied, 06-1995 (La. 11/03/06), 940 So.2d 671, we stated:

Louisiana jurisprudence created the doctrine of apparent authority in an effort to protect third parties "unauthorized acts of an apparent agent." Boulos v. Morrison, 503 So.2d 1, 3 (La. 1987). In order for apparent authority to apply, the "principal must first act to manifest the alleged agent's authority to an innocent third party;" and the "third party must rely reasonably on the manifested authority of the agent." Id. The third party cannot simply rely on the apparent authority of the putative agent and must inquire into the extent of the power of the mandatary. Id. The third party must have a reasonable belief based on the facts that the putative mandatary in fact has authority. Salley v. Colonial Marine Indus., Inc., 95-2215 (La.App. 4 Cir. 09/11/96), 680 So.2d 1242, 1250.
[9] We find that the self-serving statements made in the affidavit of Ms. Clarke ("Mr. Collins then indicated that USAA would pay the $258,000 insurance policy limit and stated that the damage he observed met or exceeded that amount.") insufficient to create an issue of material fact. We also note that Ms. Clarke contradicted herself when she stated in her earlier deposition that Mr. Collins never made "any promises that the policy limits would be paid[.]"