34 So.3d 932 (2010)
Robin L. Wegener, Wife of and Hildrith WEGENER III
v.
LAFAYETTE INSURANCE COMPANY.
No. 2009-CA-0072.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 2010.
*934 Richard C. Trahant, Richard C. Trahant, Attorney at Law, John H. Denenea, Jr., Shearman-Denenea, L.L.C., New Orleans, Louisiana, Jack E. Morris, Jack E. Morris, Attorney at Law, Metairie, Louisiana, for Plaintiffs/Appellees.
Stephen R. Barry, Kathleen C. Marksbury, Barry & Piccione, APLC, New Orleans, Louisiana, for Defendant/Appellant.
(Court composed of Judge JAMES F. McKAY III, Judge TERRI F. LOVE, Judge ROLAND L. BELSOME).
JAMES F. McKAY III, Judge.
This Hurricane Katrina litigation involves a dispute between a homeowner and their insurance company over coverage issues. For the following reasons, we affirm the judgment of the court below.

FACTS AND PROCEDURAL HISTORY
Hildreth Wegener III and Robin L. Wegener owned and resided in a waterfront home located in the Venetian Isles subdivision of New Orleans East. On August 29, 2005, Hurricane Katrina caused severe damage to the Wegeners' home. Some of the damage was caused by storm surge and some was caused by wind and wind driven rain. At the time of Hurricane Katrina, the Wegeners' home was insured by Lafayette Insurance Company.
On September 3, 2005, the Wegeners notified Lafayette of their loss. On October 15, 2005, Lafayette assigned the claim to Teresa Nelson, an adjuster with Cunningham Lindsey US, Inc. Ms. Nelson contacted the Wegeners and met them at their property for an inspection on October 19, 2005. On November 14, 2005, Ms. Nelson issued a report which found "significant water damage to the inside of the home" and "extensive damage to the shingles on all slopes" of the roof. However, Ms. Nelson recommended payment of only $24,979.90 for the damage to the Wegeners' dwelling and contents and no payment for damage to other structures or for prohibited use, loss of use, or additional living expenses. Thereupon, Lafayette issued payments to the Wegeners in the sums of $23,888.48 for the covered damage to their dwelling and $1,091.42 for the covered damage to their personal property on November 23, 2005. On January 30, 2006, Lafayette paid the Wegeners an additional $658.66 for an awning and $1,039.20 for a wet mattress set.
The Wegeners were not satisfied with the amounts tendered by Lafayette and *935 they retained a structural engineer, Roy Carruba, to inspect their property and prepare a report on its damage. Mr. Carruba's report, dated March 15, 2006, found that in addition to severe water infiltration, excessive wind pressures had caused the house to move laterally on its foundation, loosened the primary framing member connections, and damaged the wooden structure. Mr. Carruba recommended that the Wegeners demolish the structure entirely down to the foundation. The Wegeners forwarded Mr. Carruba's report to Lafayette on March 22, 2006.
Lafayette then retained Haag Engineering to inspect the issue of wind versus flood damage and prepare a report. Haag issued its report on June 12, 2006. The report stated that "Maximum sustained winds in this neighborhood during Hurricane Katrina were, according to the National Weather Service, on the order of 70 mph, less than hurricane force," attributed almost all damage to the first floor and below to storm surge, and found no apparent storm damage to the frame or foundation of the home. Based on this report, Lafayette refused to make any further payments to the Wegeners.
Based on Mr. Carruba's findings and the recommendations in his report, the Wegeners had their house torn down. About six weeks after Hurricane Katrina, the Wegeners moved into a piece of property they owned in Mandeville and had previously rented out for $1,400 to $1,500 per month.
On May 31, 2007, the Wegeners filed suit against Lafayette for breach of contract, general damages and penalties pursuant to La. R.S. 22:658 and La. R.S. 22:1220. A jury trial was held from June 30, 2008 through July 3, 2008. The jury awarded the Wegeners $20,000.00 for the wind damage to the structure, $4,000.00 for wind damage to the contents of the property and $45,800.00 in additional living expenses. The Wegeners filed a motion for judgment notwithstanding the verdict or new trial (JNOV). A hearing was held on this motion on September 26, 2008, and on October 24, 2008, the trial court granted the JNOV, finding that as to the issues of penalties, pursuant to La. R.S. 22:1220, the facts and inferences pointed so strongly in favor of the plaintiffs that reasonable jurors could not arrive at a contrary verdict that the defendant's failure to pay the plaintiffs for their additional living expenses within sixty (60) days after receipt of satisfactory proof of loss was arbitrary, capricious and without probable cause. Lafayette now appeals from the jury's verdict and the trial court's judgment. The Wegeners have answered the appeal.

DISCUSSION
On appeal, Lafayette raises the following assignments of error: 1) the trial court erred in granting plaintiffs' motion for judgment notwithstanding the verdict and awarding penalties pursuant to La. R.S. 22:1220; 2) the jury erred in awarding damages to the plaintiffs for additional living expenses that were not caused by a covered peril; 3) the jury erred in finding that Lafayette violated the provisions of La. R.S. 22:1220; and 4) the trial court erred by not allowing testimony or evidence of plaintiffs' flood insurance proceeds. On cross-appeal, the Wegeners argue that the trial court erred in failing to grant a new trial on either peremptory or discretionary grounds.
We will first address the defendant's second and third assignments of error. Lafayette contends that the jury erred in awarding damages to the plaintiffs for additional living expenses that were not caused by a covered peril and in finding that Lafayette "misrepresented pertinent facts or insurance policy provisions relating to any coverages at issue *936 and/or arbitrarily, capriciously, or without probable cause failed to pay the amount due on Mr. and Mrs. Wegener's homeowner's claim within sixty days after it received satisfactory proofs of loss."
The jury found that Lafayette owed the Wegeners their policy limits of $45,800.00 for additional living expenses (loss of use), including loss of rental income, incurred as a result of wind damage to their home. At trial, evidence was adduced that indicated that a great deal of the damage to the Wegeners' property was caused by wind damage. Clearly, there was an evidentiary basis for the jury to determine that the Wegeners were entitled to their additional living expenses.
Under La. R.S. 22:1220(B)(1), an insurer breaches its duty of good faith and fair dealing owed to its insured by knowingly "[misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue." A misrepresentation relating to a coverage issue would involve facts about the policy, "or exclusions from coverage." Talton v. USAA Cas. Ins. Co., XXXX-XXXX, pp. 19-20 (La.App. 4 Cir. 3/19/08), 981 So.2d 696, 709-710. In the instant case, when the adjuster retained by Lafayette inspected the loss on October 19, 2005, she told the Wegeners: "We both know what happened here, but if water touched it, we're not paying for it." The jury reasonably could have found that this was a misrepresentation regarding the policy.
Under La. R.S. 22:1220(B)(5), an insurer breaches its duty of good faith and fair dealing owed to its insured by knowingly "[f]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." To recover under the statute, an insured "has the burden of establishing three things: (i) that the insurer received a satisfactory proof of loss, (ii) that the insurer failed to pay the claim within the applicable statutory period, and (iii) that the insurer's failure to pay was arbitrary and capricious." Boudreaux v. State Farm Mut. Auto. Ins. Co., XXXX-XXXX (La.App. 4 Cir. 2/2/05), 896 So.2d 230, 233 (citing Sterling v. U.S. Agencies Casualty Co., 2001-2360 (La.App. 4 Cir. 5/15/02), 818 So.2d 1053, 1057. In this case, Lafayette received satisfactory proof of the Wegeners' loss at the latest on October 19, 2005 when Ms. Nelson inspected the insured property and observed "significant water damage to the inside of the home" as a direct result of "extensive damage to the shingles on all slopes" of the roof. The damages to the Wegeners' property included the roof, soffits, facia and siding as well as the electrical system on the third floor and ceilings and contents throughout the structure. An awning over the Wegeners' dock was also blown away. Although Lafayette paid the Wegeners $24,979.90 for the insured dwelling and contents, the jury found that Lafayette violated La. R.S. 22:1220(B)(5). Based on the evidence before this Court, we cannot find that the jury's conclusion was clearly wrong or manifestly erroneous.
We will now address the defendant's first assignment of error. On appeal, an appellate court reviews a JNOV using the same criteria the trial court uses. Thus, the appellate court must determine whether the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. If the appellate court determines that reasonable persons might reach a different conclusion, then the trial court erred in granting the motion and the jury verdict should be reinstated. Forbes v. Cockerham, XXXX-XXXX, pp. 30-31 (La.1/21/09), 5 *937 So.3d 839, 857-58. In the instant case, the trial court found that on the issue of penalties for bad faith claims adjusting, "the facts and inferences point so strongly and overwhelmingly in favor of plaintiffs on this issue that reasonable jurors could not arrive at a contrary verdict." The jury found Lafayette to be in violation of the provisions of La. R.S. 22:1220 and therefore should have awarded penalties under La. R.S. 22:1220. This Court recently conducted a de novo review of a jury verdict finding that an insurance company "misrepresented policy provisions" and awarded penalties in a Katrina case involving a commercial insurance policy. The Court awarded the plaintiff a penalty of "two times the damages sustained" under La. R.S. 22:1220(C). Neal Auction Co., Inc. v. Lafayette Insurnce Co., XXXX-XXXX (La. App. 4 Cir. 4/29/09), 13 So.3d 1135, writ denied, XXXX-XXXX, XXXX-XXXX (La.11/6/09), 21 So.2d 313. That is the same approach employed by the trial court in this case. Accordingly, we find no error in the trial court's granting a JNOV in this case.
In its fourth assignment of error, Lafayette contends that the trial court erred by not allowing testimony or evidence of the plaintiffs' flood insurance proceeds. The Louisiana Fifth Circuit Court of Appeal has observed that wind insurance policies and flood insurance policies "are complimentary and do not cover the same types of losses" and do not create a situation of "double coverage." Urrate v. Argonaut Great Central Ins. Co., XXXX-XXXX (La.App. 5 Cir. 8/31/04), 881 So.2d 787, 789. Therefore, the Wegener's receipt of payments under a flood insurance policy is not relevant. Any probative value would be greatly outweighed by unfair prejudice and confusion of the issues. See La. C.E. art. 403. Accordingly, we find no merit in Lafayette's fourth assignment of error.
On cross-appeal, the Wegeners argue that the trial court erred in failing to grant a new trial on either peremptory or discretionary grounds. On appeal, a trial court's granting or denial of a motion for new trial is reviewed for abuse of discretion. Davis v. Wal-Mart Stores, Inc., XXXX-XXXX, p. 10 (La.11/28/00), 774 So.2d 84, 93. It is only when a verdict or judgment appears contrary to the law and evidence that a new trial should be granted. See La. C.C.P. art. 1972. In the instant case, the trial court carefully weighed the evidence before it and applied the law accordingly. We find no abuse of discretion in the trial court's refusal to grant the Wegeners a new trial.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
LOVE, J., concurs and assigns reasons.
BELSOME, J., concurs with reasons.
LOVE, J., Concurs and Assigns Reasons.
I respectfully concur in the results with the majority. However, I write separately to further address the evidence in the record regarding the jury's $45,800 award for additional living expenses. Factual determinations are reviewed by appellate courts using the manifest error/clearly erroneous standard of review. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Lafayette contends that the flood damage to the Wegeners' home occurred first and rendered it uninhabitable. Lafayette's expert, Stony Kirkpatrick, an engineer from HAAG Engineering, testified that flood waters caused the damage to the first floor of the Wegeners' property prior to the occurrence of any wind damage and *938 that any shifting of the structure was caused by water.
Roy Carruba, the Wegeners' expert in civil and structural engineering and in construction, testified that roof, soffits, facia, and siding of the home were peeled off down to the plywood, studs, and beams in many places, and numerous windows had been broken and blown out. Thus, he concluded that the structure "had substantial wind damage before the flood waters came in." Mr. Carruba stated that wind pressures damaged the Wegeners' property to the extent that he recommended demolishing the structure.
After demolishing their home, the Wegeners moved into a rental property they owned in Mandeville. The Mandeville rental property allegedly rented for $1,400 to $1,500 a month prior to Hurricane Katrina and the rental property located in their demolished home allegedly rented for $600 a month.
Given the juxtaposed evidence in the record, I do not find that the trial court erred by confirming the jury's factual finding that the Wegeners' incurred additional living expenses as a result of perils covered by Lafayette.
BELSOME, J. Concurs with Reasons.
I write separately to address Lafayette's unprofessional conduct prior to and during trial of this matter. First, the record reflects that counsel for Lafayette failed to advise counsel for Appellees until the day before trial that Lafayette intended to use a cartoon animation from the Times-Picayune website entitled "The Inundation of New Orleans" at trial. Appellees objected to the repeated use of this animation, as they were afforded no opportunity to authenticate the animation or challenge its data or methodology. Additionally, Lafayette's structural engineering expert, Carroll Stone Kirkpatrick, testified that in his opinion, the animation comported with the theory that a wall of water destroyed Appellees' home prior to the wind damage. Accordingly, Appellees submit that the animation was not only hearsay, but also a highly prejudicial misrepresentation upon which the jury could have relied as supporting Lafayette's theory that a wall of water destroyed the Wegeners' home before being damaged by hurricane winds.
A review of the trial transcript also evidences that Lafayette did not disclose the identity of a key participant in an inspection of the Wegeners' home until the trial was already in progress. Not until Mr. Kirkpatrick testified was it revealed that Freeman Risener, a licensed electrical engineer, accompanied Mr. Kirkpatrick during his inspection of Appellees' home and participated in taking measurements and photographs of the property. Upon learning of Mr. Risener's existence at that moment, counsel for Appellees objected on the grounds that Mr. Risener had not been identified by Lafayette during the course of discovery[1] and did not appear on any of *939 Lafayette's witness lists; consequently, Appellees were denied the opportunity to depose or cross-examine Mr. Risener regarding his participation in the inspection of the Wegeners' home with Mr. Kirkpatrick.[2]
This writer is troubled by Lafayette's aforementioned lack of professionalism and candor, which was not addressed by the majority. Although I may have decided the matter differently, I cannot say that the trial court's denial of Appellees' motion for new trial was an abuse of discretion. Therefore, I respectfully concur.
NOTES
[1] A review of the trial transcript reveals that counsel for Appellees brought to the trial court's attention that neither Mr. Kirkpatrick's name nor Mr. Risener's name appeared on the inspection reports:

Your Honor, I want to bring several things to the Court's attention and to have this documented on the record because some of it we have gone on the record with, some of it we haven't.
One of the major issues that just came up in this witness's testimony is that there was a technician who accompanied him to the Wegener property on the date of the inspection. That technician not only has not ever been identified. [sic] And I took David Teasedale's, who is the other engineer, deposition. There are two signatures on the report, David Teasedale and Mr. Kirkpatrick. The report consistently says "we". The Court is now aware that in response to discovery as to who inspected the property, Mr. Teasedale, under sworn discovery responses, was identified. Ms. Gober [Lafayette property claims manager] in her deposition also identified David Teasedale as the individual who inspected the property.
It wasn't until Mr. Teasedale's deposition that we found out it wasn't Mr. Teasedale. Mr. Teasedale never stepped foot on the property, but it was Mr. Kirkpatrick.
Now I'm hearing that there was a third person. And so Judge, whoever took measurements and photographsand I can represent to the Court that that person should have been identified and made available for deposition.
[2] At trial, Mr. Kirkpatrick testified that although Mr. Risener was a registered electrical engineer, Mr. Risener did not inspect any electrical system in the Wegeners' home. Appellees submit that the complete omission of Freeman Risener's name by Lafayette is significant because Lafayette did not remit payment for the electrical system damage to the Wegeners' home; when asked whether he knew whether the Wegeners' electrical system was damaged, Mr. Kirkpatrick responded, "Well, I would be assured that it was."